Mark **EDWARDS**, Plaintiff-Appellant,

v.

Margaret **HECKLER**, Secretary of Health and Human Services, Defendant-Appellee.

No. 83–3272.

United States Court of Appeals, Eleventh Circuit.

May 16, 1984.

---

Jeffrey Kushner, Fort Myers, Fla., Sanford A. Meizlish, Columbus, Ohio, Robert Castellanos, Fort Myers, Fla., for plaintiff-appellant.

Virginia M. Covington, Asst. U.S. Atty., Tampa, Fla., for defendant-appellee.

Before FAY, VANCE and HATCHETT, Circuit Judges.

HATCHETT, Circuit Judge:

In this social security case, we examine whether substantial evidence exists to support the Secretary of Health and Human Services' (Secretary) decision to deny disability benefits to Mark Edwards. We reverse.

### Background

Edwards filed applications for disability insurance benefits and supplemental security income on September 9, 1980, alleging disability commencing January 14, 1979.[*] The disability, according to Edwards, consists of loss of balance and black-out spells. He is twenty-seven years old, has an eleventh grade education, and has worked as a rodman for a surveying company, a plumber's helper, and a service station attendant for short periods of time. His longest period of employment was the two and a half months as a plumber's helper.

Edwards alleges disability due primarily to the seizures. Evidence before the Administrative Law Judge (ALJ), indicates that he suffered seizures during his attempts at employment, that the seizures have occurred since the age of eleven, and that he has approximately three seizures every day. In describing these seizures, Edwards stated: "Sometimes, most of the time, sometime I just fall flat off my feet, and then sometimes I don't know what I'm doing and my mom could tell you the rest, what else happens. Then I'm okay after that." The seizures occur whenever he engages in any type of physical activity.

---

[*] The courts have stressed that the definition of disability for an awarding of disability insurance benefits is identical to the supplemental security income (SSI) disability definition. *Strickland v. Harris,* 615 F.2d 1103, 1105–06 (5th Cir.1980). "Likewise, as amended in 1976, the judicial review of SSI determinations by the Secretary, under 42 U.S.C. § 1383(c)(3), was specifically made identical with that provided for the Secretary's social security determinations by 42 U.S.C. § 405(g)." *Strickland,* 615 F.2d at 1106.

The record contains this dialogue between Edwards and his lawyer:

Q. What kind of things are you—can you do without having a seizure?

A. Well, sometimes I can. Like I can mow for an hour or two, something like that, and the yard don't take that long to mow, and it won't come on, but then, like the next day I can get up out of bed, I'd be walking into the kitchen and just come on.

Q. So, really, they come without any kind of warning?

A. They don't warn me at all. It just comes like that. And like I say, right lately my father's been in the hospital and I've been doing most of the chores around the house and its been coming on me pretty rapidly lately.

Q. Um-hmm, what do you feel like when you come back to. When you realize what's going on after one of them?

A. When I come back to, I'm normal. But when that happens, I lose myself, I don't know what happens. I don't know what happens until I'm told. My mom sees it and then she tells me.

Several of Edwards' former co-workers submitted reports in which they stated that they witnessed Edwards suffering a seizure. One co-worker stated that before each seizure, Edwards was very normal. During the seizure, however, he would "jirk [sic] and made unusual movements and expressions and words." Another worker stated that he was in a truck that Edwards was driving when he suffered a seizure. "He ran directly into some posts used as a barricade and tore up the truck. His eyes seemed fixed straight ahead and I yelled for him to stop and he did not respond. After we hit the post he started to start the truck again like nothing had happened...."

Edwards was first examined by Dr. Berris in January, 1978. Berris has a medical speciality in neurology. In Berris's report, he stated:

For the past few years in spite of medication he [Edwards] has had spells of varying frequency which are more frequent when he is under tension and stress ... this patient's history is consistent with minor attacks. In this age group they probably represent a type of temporal lobe seizure; however, the fact that they began at age ten and persist raises the question of a petit mal type of seizure which persists into early adulthood.

In addition, Dr. Berris concluded that Edwards suffered some gum hypertrophy, particularly in the mandibular portion of the mouth. Although Dr. Berris concluded that Edwards could continue to work as a plumber's helper, he did state that Edwards does have angry, hostile, and aggressive tendencies which may interfere with his ability to perform on the job. Dr. Berris, after examining Edwards's EEG, concluded that the medical evidence is consistent with major and minor seizures. Although Dr. Berris concluded that Edwards had done very well in attempting to control seizures, the record is replete with evidence that despite the fact that Edwards was taking various medications, he continues to suffer recurrent seizures.

Dr. Harris L. Bonnette, a specialist in neurology, examined Edwards in December, 1980. After carefully examining Edwards, Bonnette concluded:

This patient has a seizure disorder dating back to age ten. His seizures or spells are currently very frequent. His seizures have not come under control with proper doses of anti-convulsants (Dilantin and Clonipin). It is suspected that a portion, if not a major portion of his spells or seizures are of a psychogenic origin. It is somewhat unusual to see seizures precipitated by strenuous activity. It is also unusual to see seizures not improve with therapeutic doses of anti-convulsants. Regardless of whether his spells are due to seizures or of psychiatric origin, he is presently disabled because of this process.

Dr. Bonnette, after examining the EEG taken in December, 1980, concluded: "Abnormal EEG because of paroxysmal activity with features of centre encephalic ori-

gin. This EEG is consistent with a clinical diagnosis of seizure disorder."

Robert Silver, Ph.D., conducted a psychological evaluation of Edwards in August, 1981. On the Wechsler Adult Intelligence Scale-Revised Form (WAIS), Edwards obtained a full-scale I.Q. of 72, a verbal I.Q. of 75, and a performance I.Q. of 67. Dr. Silver stated that Edwards experiences frequent seizure-like phenomena which would endanger him in the work place. "He showed abnormal elevations on seven of the ten clinical scales and an extremely elevated score on schizophrenia followed by depression, paranoia, psychopathic deviate, psychasthenia, social introversion, and hypochondriasis."

> While this young man is potentially capable of employment, until his seizures are controlled medically, or his problems are resolved psychologically, or both, he could not deal with the requirements of a job.
>
> ... Indeed, the social-emotional cost of having seizures has been quite devastating for this young man.

Dr. Silver completed a supplemental questionnaire pertaining to Edwards's residual functional capacity. In the questionnaire, Silver noted that Edwards's impairments ranged from none to moderate in degree in regards to his ability to perform various tasks. Silver noted, at the conclusion of the questionnaire, that: "Until his seizures are brought under better control, it is unlikely an employer will hire him."

The Social Security Administration initially, and on reconsideration, denied Edwards's application for disability benefits. The ALJ concluded that under the sequential evaluation process set forth in the regulations:

> [A]lthough claimant has a seizure disorder and psychological problems, this does not significantly limit his physical or mental abilities to do basic work activities not involving complex tasks or frequent contact with others. Therefore, he does not have a severe impairment and is not under a disability as defined in the Social Security Act, as amended.

Prior to the ALJ's decision, a letter was sent to him by Edwards's lawyers. In the letter, which accompanied Dr. Silver's evaluation, Edwards's lawyers indicated that on the basis of Dr. Silver's report, Edwards is entitled to benefits pursuant to the listing of impairments found at 20 C.F.R., pt. 404, subpart P, Appendix 1, § 12.05(C) (1983). Although the ALJ did not specifically and directly address the section 12.-05(C) claim, the claim was before the ALJ before he rendered his decision against Edwards.

After reviewing the ALJ's decision, the Appeals Council denied Edwards's request for review, and the ALJ's determination became the final decision of the Secretary. On February 14, 1983, the district court affirmed the Secretary's decision.

### Discussion

The regulations in 20 C.F.R. § 404.1520 (1983) provide a sequential evaluation process through which the Secretary determines whether a claimant is entitled to disability benefits. Under this sequential evaluation process, if it is determined that the claimant is not currently engaged in substantial gainful employment and a severe impairment is present, the claimant is entitled to disability benefits if he meets the requirements of § 404.1520(d) (Appendix 1). *Hogan v. Schweiker*, 532 F.Supp. 639, 643 (D.Colo.1982). "If you have an impairment which meets the duration requirement and is listed in Appendix 1, or we determine that the impairment is equal to one of the listed impairments, we will find you disabled without considering your age, education, and work experience." 20 C.F.R. § 404.1520(d). If a claimant's condition meets the requirements of Appendix 1, and he is not engaging in substantial gainful activity, he is deemed to be disabled, and the administrative law judge is not required to determine whether the impairments prevent performance of claimant's usual work.

Edwards's primary contention is that his impairment falls under an impairment listed in Appendix 1, and he is entitled to disability benefits under 20 C.F.R., pt. 404,

subpart P, Appendix 1, § 12.05(C). Under this section, a claimant is deemed disabled if he has: "[An] I.Q. of 60 to 69 inclusive (see 12.00(B)(4)) and a physical or other mental impairment imposing additional and significant work-related limitation of function." The key question before this court is whether substantial evidence exists to support the Secretary's conclusion that Edwards is not disabled under 20 C.F.R., pt. 404, subpart P, Appendix 1, § 12.05(C).

"Our review is statutorily limited to determining whether substantial evidence supports the Secretary's decision that [Edwards] was not disabled. 42 U.S.C. § 405(g)." *Epps v. Harris*, 624 F.2d 1267, 1269 (5th Cir.1980).

We are straitly confined by 42 U.S.C. § 405(g) to determining, upon careful review of the entire record, whether it contained substantial evidence to support the Secretary's findings.... This does not mean we affirm on gossamer. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Anderson v. Schweiker*, 651 F.2d 306, 308 (5th Cir.1981).

Before we examine the substantial evidence question, we must first determine whether the Secretary analyzed the claim set forth by Edwards under section 12.-05(C). As discussed earlier, Edwards, through a letter, indicated the applicability of section 12.05(C) to his case. Even so, no evidence exists in the record to indicate that the ALJ directly analyzed this point. Nevertheless, in determining that Edwards did not have a severe impairment under section 404.1520(c), the Secretary was required to determine that Edwards's alleged impairments did not significantly limit his physical or mental ability to do basic work activities. The definition of a severe impairment under section 404.1520(c) closely parallels that portion of section 12.05(C) of Appendix 1 which requires a showing of a physical or other mental impairment imposing additional and significant work-related limitation of function. The characteristics of a severe impairment (significantly limit-

ing his physical or mental ability to do basic work activities), thus, are almost identical to those characteristics of a disabling condition under section 12.05(C) (physical or other mental impairment imposing additional and significant work-related limitation of function). Although not identical, for all intent and purposes, for Edwards to satisfy the second-half requirement of section 12.05(C), he must prove that he suffers from a severe impairment. Thus, we can conclude that when the Secretary found no significant limitation of basic work activities under section 404.1520(c), he determined that no physical or other mental impairment existed imposing additional and significant work-related limitation of function under section 12.05(C). Although not directly so stating, the Secretary found that Edwards was not entitled to relief under section 12.05(C) of Appendix 1. It is this determination which we must examine under the substantial evidence test.

The first requirement of section 12.05(C) is that the claimant have an I.Q. of 60 to 69 inclusive. The regulations state under section 12.00(B)(4) that, "where more than one I.Q. is customarily derived from the test administered, i.e., where verbal, performance, and full scale I.Q.'s are provided as on the WAIS, the lowest of these is to be used in conjunction with 12.05." Although Edwards did attain scores of 75 on the verbal portion and 72 on the full scale portion of the I.Q. test, his performance I.Q. was 67. In applying the lower of the three scores, Edwards satisfied that portion of section 12.05(C) which requires an I.Q. of 60 to 69 inclusive.

The major point of contention in this case is whether Edwards suffers from a physical or other mental impairment imposing additional and significant work-related limitation of function. As discussed earlier, this portion of section 12.05(C) closely parallels the definition of severe impairment as set forth in section 404.1520(c). "If you do not have any impairment(s) which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment

and are, therefore, not disabled." Section 404.1520(c). To analyze whether Edwards meets the second half of the section 12.-05(C) test, we must, in effect, determine whether Edwards has a severe impairment.

Whether these impairments are in and of themselves disabling is not the question. Rather, applying section 12.05(C), the ALJ should have determined solely whether these findings constitute 'additional and significant work-related limitations of function.' While the regulations do not further explain or define those terms, the regulations do define an impairment as non-severe 'if it does not significantly affect your physical or mental abilities to do basic work activities.' 20 C.F.R. § 404.1521.

*Wright v. Schweiker,* 556 F.Supp. 468, 476 (M.D.Tenn.1983).

■ Our review of the record shows that no substantial evidence exists to support the Secretary's conclusion that Edwards's physical or other mental impairments did not impose additional and significant work-related limitations of function. Likewise, review of the record shows that no substantial evidence exists to support the Secretary's conclusion that Edwards's impairments are not severe.

The Eleventh Circuit examined a Secretary's finding of a non-severe impairment in *Brady v. Heckler,* 724 F.2d 914 (11th Cir.1984).

In the 1978 regulation's, the Secretary stated that the definition 'a medically determinable impairment is not severe if it does not significantly limit an individual's physical or mental capacity to perform basic work related functions' is a clarification of the previous regulation's terms 'a slight neurosis, slight impairment of sight or hearing, or other slight abnormality or a combination of slight abnormalities.' It is a clarification, not a change, in the definition of severe impairment.

*Brady,* 724 F.2d at 919. The *Brady* court went on to hold that even under the 1980 recodification of the regulations, the level of severity needed for a finding of a non-se-

vere impairment has not changed. "An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Brady,* 724 F.2d at 920.

It is apparent that Edwards's impairments are more than slight abnormalities. Edwards has suffered seizures since his early teens, and suffers three seizures a day. Dr. Berris stressed that Edwards's history is consistent with minor attacks. He could not rule out a seizure disorder, particularly of a minor type or temporal lobe type. After examining the EEG, Dr. Berris concluded that the test was consistent with major and minor seizures. Dr. Bonnette stressed that Edwards has a seizure disorder which has not been brought under control through the use of proper medication. Dr. Bonnette concluded: "Regardless of whether his spells are due to seizures or of psychiatric origin, he is presently disabled because of this process." Dr. Bonnette, after examining the EEG, concluded that the test was consistent with a clinical diagnosis of seizure disorder. Dr. Silver concluded: "While this young man is potentially capable of employment, until his seizures are controlled medically, or his problems are resolved psychologically, or both, he could not deal with the requirements of a job."

Three doctors have conclusively determined that Edwards suffers from a seizure disorder. Edwards's testimony before the ALJ indicates that the frequency of the seizures has increased recently. All of the evidence points to the same conclusion. No substantial evidence exists in support of a conclusion that Edwards suffers from a slight abnormality. Under the definition of a non-severe impairment set forth by this court in *Brady,* we must conclude that Edwards's impairments are severe.

The medical records show a person with a seizure disorder and severe physical and mental ailments. Finding a severe impairment under section 404.1520(c), we con-

clude that Edwards has an impairment which significantly limits his physical or mental abilities to do basic work activities. Since the definition of severe impairment is almost identical to the second half of the section 12.05(C) test, we can also conclude that Edwards, by showing a severe impairment, has also shown a physical or other mental impairment imposing additional and significant work-related limitation of function. In other words, by showing the existence of a severe impairment, Edwards has shown that he meets the second-half requirement of section 12.05(C).

In support of its denial of benefits to Edwards, the Secretary seeks to rely upon the questionnaire submitted by Dr. Silver. The questionnaire, however, is not conclusive in a determination of the existence of a severe impairment. The questionnaire does not address the specific question of whether Edwards suffers a severe impairment under section 404.1520(c) and section 12.05(C). The questionnaire is more concerned with Edwards's residual functional capacity to perform substantial gainful activity in the work place. However, in examining Edwards's entitlement to recovery under section 12.05(C), we focus on the question of whether he suffers a severe impairment, and not whether he retains the residual functional capacity to perform other substantial gainful activity in the work place. Although the questionnaire does deal with the degree that the impairments may interfere with the ability to function, it was not designed to, nor does it, analyze whether Edwards suffers from a severe impairment. Under the regulations, a claimant, although retaining the residual functional capacity to perform substantial gainful activity, may still be deemed to have a severe impairment. In our review of this case, the crucial point is the existence of a severe impairment, not the existence of residual functional capacity. Since the questionnaire does not directly analyze the existence of a severe impairment, it is neither conclusive nor dispositive in our determination of whether substantial evidence exists to support the Secretary's conclusion of no disability.

In applying the definition of a severe impairment as set forth in *Brady*, we conclude that Edwards's impairments were much more than a slight neurosis, slight impairment of sight or hearing, or other slight abnormality or a combination of slight abnormalities. We are mindful of the fact that neither the ALJ nor the district court had the benefit of *Brady* when hearing this case.

Since no substantial evidence exists to support the Secretary's finding of no disability, we reverse. Edwards is entitled to disability benefits in that he has shown that he meets that section of listed impairments set forth in 20 C.F.R., pt. 404, subpart P, Appendix 1, § 12.05(C).

REVERSED AND REMANDED.