Robert BANEKY Plaintiff,

v.

Kenneth S. APFEL, Commissioner
of Social Security, Defendant.[1]

No. 96 CIV. 7419 LAK.

United States District Court,
S.D. New York.

March 20, 1998.

Richard P. Morris, Klein, Wagner & Morris, L.L.P., New York, NY, for Plaintiff.

Susan D. Baird, Assistant United States Attorney, Mary Jo White, United States Attorney, New York, NY, for Defendant.

**1.** Kenneth S. Apfel was sworn in as Commissioner of Social Security on September 29, 1997. He is therefore substituted as defendant in this action, pursuant to FED. R. CIV. P. 25(d)(1).

**2.** Pl. Obj., p. 1.

**3.** 20 C.F.R. §§ 404.1502, 416.920.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Plaintiff Robert Baneky brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) challenging the final determination of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits. The Commissioner denied the application on the ground that plaintiff neither suffered from an impairment listed in the regulations, nor an equivalent impairment, nor lacked the residual functional capacity to perform his past relevant work.

Pending before the Court are plaintiff's motion for judgment on the administrative record and defendant's cross-motion for judgment on the pleadings. Magistrate Judge Douglas F. Eaton has filed a report and recommendation, dated March 3, 1998, recommending that the Commissioner's decision be affirmed because it is supported by substantial evidence. Plaintiff objects to the report and recommendation on the ground that "the record adequately discloses that the plaintiff does indeed have a condition which meets that of Section 12.05(c) of the 'listings of impairments' found at 20 C.F.R, Part 404, Subpart P, Appendix 1." [2]

## I.

In assessing a claim for disability benefits, the Commissioner engages in a five-step process designed to determine whether a person has a "disability" within the meaning of the statute.[3] The first step considers whether the claimant is engaged in "substantial gainful activity." If so, then benefits are denied.[4] If not, the second step considers whether the claimant's impairment is "severe." If not, benefits are denied.[5] If so, the third step considers whether the impairment meets or equals a condition set forth in the "Listing of Impairments" contained in the regulations.[6]

**4.** *Id.* §§ 404.1520(a), (b), 416.920(a), (b).

**5.** *Id.* §§ 404.1520(c), 416.920(c).

**6.** *Id.* §§ 404.1520(d), 416.920(d), Part 404, Subpart P, App.1.

"These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment." [7] If the impairment meets or equals a listed impairment, the claimant is "disabled" and is entitled to benefits, and the inquiry ends. If not, the fourth step examines the claimant's "residual functional capacity," which involves an analysis of the claimant's capacity to engage in basic work activities and a decision as to whether the claimant has the capacity to engage in his or her prior work. Benefits are denied if the claimant's residual functional capacity allows the claimant to perform his or her prior work.[8] If the claimant's residual functional capacity does not rise to the level required by his or her prior work, however, the claimant is entitled to benefits unless the Commissioner can demonstrate that the claimant, in light of his or her residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." [9]

Applying the five-step sequential evaluation process to plaintiff's claim, the Administrative Law Judge ("ALJ") concluded at the first step that plaintiff "has not engaged in substantial gainful activity since 1992." [10] Proceeding to the second step, the ALJ weighed the significance of plaintiff's allegations of lower back pain, "emotional problems," and a learning disability. After reviewing the medical evidence as to each of these allegations, the ALJ simply concluded that plaintiff "has a severe impairment," although he did not specify which, if not all, of the impairments alleged by plaintiff warranted this result.[11]

At the third step of the analysis, the ALJ concluded that plaintiff's "severe impairment" did not meet or equal a listed impairment.[12] The ALJ concluded also that plaintiff retained the residual functional capacity to perform his past relevant work.[13] The ALJ therefore denied plaintiff's claim.

## II.

Judicial review of the Commissioner's determination is strictly limited. The Court may set aside the Commissioner's determination solely when it is based upon legal error or is not supported by substantial evidence.[14]

Plaintiff asserts that the Commissioner erred at step three of the five-step analysis in that there is not substantial evidence in the record to support the conclusion that his impairment does not meet or equal a listed impairment. Intertwined with this evidentiary point is the argument that the Commissioner employed an incorrect legal standard in determining whether plaintiff's impairment(s) met the requirements of Section 12.05(c).

Section 12.05(c) applies when two elements are met: the claimant must have (1) "a valid verbal, performance, or full scale IQ of 60 through 70" and (2) "a physical or other mental impairment imposing additional and *significant work-related limitations of function*." [15] Plaintiff contends that his verbal IQ scores indisputably satisfy the first prong of the Section 12.05(c) test and that either his lower back pain or his other mental and emotional problems are sufficient to satisfy the second. In support of this argument, plaintiff asserts that the ALJ employed the

7. *Dixon v. Shalala,* 54 F.3d 1019, 1022 (2d Cir. 1995).

8. 20 C.F.R. §§ 404.1520(e), 416.920(e).

9. *Decker v. Harris,* 647 F.2d 291, 298 (2d Cir. 1981); 20 C.F.R. §§ 404.1520(f), 416.920(f).

10. Tr., p. 17.

11. *Id.* at 19.

12. *Id.*

13. *Id.* at 20.

14. *See, e.g., Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Quinones v. Chater,* 117 F.3d 29, 33–34 (2d Cir.1997); *Pratts v. Chater,* 94 F.3d 34, 37 (2d Cir.1996); *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir. 1982).

15. 20 C.F.R. Part 404, Subp. P, App.1, § 12.05(c) (italics added).

The Court notes that the actual language of Section 12.05(c), in contrast to the quotation appearing at multiple points in plaintiff's objections, does not contain the word "or" between the words "significant" and "work-related". This is a significant misquotation.

wrong legal standard in assessing significance under the second prong.

The ALJ's ruling contains no discussion of the legal standard employed in determining whether plaintiff's impairment satisfies Section 12.05(c). In fact, it is not clear from the ruling whether Section 12.05(c) was specifically considered at all. On the other hand, the magistrate judge's report and recommendation concludes that there is substantial evidence in the record to support the Commissioner's decision that plaintiff's "work-related functions are not significantly limited by his back pain." [16] Similarly, the report and recommendation concludes that plaintiff's "other mental problems," aside from his "moderately low IQ," do not "significantly limit his work-related functions." [17] The report and recommendation does not, however, address the legal standard for assessing "significance" as that term is used in Section 12.05(c). Nor do the Commissioner's motion papers shed any light on the subject.

The Commissioner has not promulgated regulations explaining the "significance" requirement of the second prong of Section 12.05(c) .[18] Nor has the Second Circuit con-

fronted this issue. Other circuits are divided.

There appears to be agreement among those circuits that have addressed Section 12.05(c) that the word "significant" at the very least requires the plaintiff to demonstrate that his additional work-related limitation is "more than slight or minimal." [19] Further, at least one circuit has held that "significant" does not require the plaintiff to demonstrate that the additional limitation is disabling in and of itself.[20] Beyond these relatively self-evident propositions, however, there is disagreement over the specific test to be employed in determining whether a low-IQ individual's additional impairment is "significant" for purposes of Section 12.05(c).

The benchmark in the First, Eighth, and Tenth Circuits is whether the additional limitation, considered without regard to the claimant's low IQ, would satisfy the "severity" test set forth at step two of the Commissioner's five-step process for determining disability.[21] This is not an exacting prerequisite. Indeed, the Second Circuit has held that the step two severity test "may do no more than screen out *de minimis* claims." [22]

16. R. & R., p. 19.

17. *Id.*

18. This failure has been the subject of some criticism. *See generally* Peter J. Lemoine, Significant Work-Related Limitation Of Function Under § 12.05(c), 51 Soc. Sec. Rep. Ser. 1003, 1004 (arguing that the failure to provide administrative law judges with guiding regulations in this area has contributed to disparate results in similar cases) ("Lemoine, Limitation Of Function").

19. *Nieves v. Sec. Health and Human Services*, 775 F.2d 12, 14 (1st Cir.1985); *see also Warren v. Shalala*, 29 F.3d 1287, 1291 (8th Cir.1994); *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir.1984).

20. *See, e.g., Branham v. Heckler*, 775 F.2d 1271, 1273 (4th Cir.1985).

21. *See, e.g., Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir.1997); *Warren v. Shalala*, 29 F.3d 1287, 1291 (8th Cir.1994); *Nieves*, 775 F.2d at 14.
The Eleventh Circuit, though adopting the severity test at one point, *see Edwards v. Heckler*, 736 F.2d 625, 629–31 (11th Cir.1984), since has altered its position. Under *Edwards ex rel. Edwards v. Heckler*, "significant" requires something less than severe, as that term is understood

in 20 C.F.R. Section 404.1520(c), yet something more than *de minimis*. 755 F.2d 1513, 1514–15 (11th Cir.1985). As the impact of the severity test is simply to weed out *de minimis* claims, it is arguable that it is not possible for a limitation to be more than a *de minimis* limitation and yet not be "severe" within the meaning of Section 404.1520(c). *See* Lemoine, Limitation Of Function, at 1013.

22. *Dixon*, 54 F.3d at 1030 (citing *Bowen v. Yuckert*, 482 U.S. 137, 158, 107 S.Ct. 2287, 2300, 96 L.Ed.2d 119 (1987)) (O'Connor, J., concurring, joined by Stevens, J.) ("Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits without undertaking this vocational analysis"); *id* at 180, 107 S.Ct. at 2311 (Blackmun J., dissenting, joined by Brennan and Marshall, JJ.) (to be valid under the statute, a threshold determination of severity could "den[y] disability claims only if the medical impairment is so minimal that no set of vocational factors, even if fully considered, could result in a finding of disability."); *see also Tejada v. Callahan*, 993 F.Supp. 193, 200 (S.D.N.Y.1998) ("The Second Circuit has warned that the step 2 analysis may do no more than 'screen out *de minimis* claims.' ") (citing *Dixon*, 54 F.3d at 1030; *Pickering v. Chater*, 951 F.Supp. 418, 424 (S.D.N.Y.1996)).

In contrast, the Fourth Circuit has concluded that a claimant is significantly limited within the meaning of Section 12.05(c) when it is shown that the plaintiff cannot perform his or her prior relevant work,[23] a standard more rigorous than the *de minimis* threshold of the severity test.

This Court holds that the correct standard for determining whether an "additional" impairment imposes a "significant" work-related limitation under Section 12.05(c) is the severity test employed by the First, Eighth, and Tenth circuits.[24] The actual wording of the second prong of Section 12.05(c), "a physical or other mental impairment imposing *additional and significant work-related limitations of function*," is essentially the same as that of the step two severity regulation, which asks whether the claimant has "any impairment(s) which significantly limits [his or her] physical or mental ability to do basic work activities."[25] Both regulations depend upon whether the claimant's ability to work is limited to a significant degree, strongly suggesting a similar construction. Further, a contrary interpretation would be inconsistent with the existence of Section 12.05(c) in the first place. Section 12.05(c) essentially provides that those individuals with IQ's in the range of 60 through 70 may be found disabled upon a showing that they have an additional limitation that imposes a significant limitation on their ability to work. If "significant" requires something more than "severity," however, then there would be little point in having a special category for those with limited IQ's. If the "additional" limitation must satisfy more than the second step of the five-step analysis, then a qualifying "additional" limitation often would be sufficient in its own right to support a finding of disability, rendering Section 12.05(c)'s provisions for those with low IQ's superfluous.

With this in mind, the Court considers next whether the Commissioner already has found that plaintiff's lower back pain or his "other" mental problems are "severe" within the meaning of Section 404.1520(c). If so, then plaintiff's impairment satisfies the requirements of Section 12.05(c)[26] and he is entitled to disability insurance benefits. If the Commissioner has decided to the contrary, then plaintiff is not disabled within the meaning of the statute and therefore is not entitled to benefits. Unfortunately, the Court cannot discern from the record whether the ALJ and, hence, the Commissioner found either his lower back pain or his "other" mental problems to be "severe."

The ALJ began with an extensive review of the medical evidence as it pertained to both of these alleged conditions, as well as to plaintiff's IQ.[27] The ALJ then made the following terse statement: "[c]ontinuing with the sequential evaluation process, the claimant *has a severe impairment* which does not meet or equal any listed in Appendix 1 of Subpart P."[28] Nothing that follows after this statement indicates whether the ALJ intended the phrase "a severe impairment" to refer to one, two, or all of the limitations described by plaintiff. For example, while it is clear that the ALJ was not persuaded that plaintiff's lower back pain in and of itself was a

---

**23.** *See, e.g., Flowers v. U.S. Dept. of Health and Human Services,* 904 F.2d 211, 214 (4th Cir. 1990); *Branham,* 775 F.2d at 1273.

**24.** The sole district court opinion within the Second Circuit to touch upon this issue adopted, without significant discussion, the "severity" test. *Velezquez v. Chater,* No. 93 Civ. 264E(F.), 1996 WL 107109, at *2 (W.D.N.Y. Mar.6, 1996).

**25.** 20 C.F.R. § 404.1520(c).

**26.** The Court has no difficulty in finding that the Commissioner already has determined that plaintiff's IQ satisfies the requirements of the first prong of § 12.05(c). The ALJ concluded that plaintiff "is learning disabled," based upon his "consistent" scores on three WAIS–R tests. Tr. at 21. The first WAIS–R test resulted in verbal,

performance, and full-scale IQ scores of 70, 83, and 75, respectively. *Id.* at 18, 156. The second WAIS–R test resulted in scores of 66, 81, and 72, and a third WAIS–R test resulted in scores of 71, 85, and 77. *Id.* at 18. Thus, plaintiff's three verbal IQ scores are 70, 66, and 71. The first two of these fall within the range identified under prong one of Section 12.05(c), as does the average of the three. Verbal IQ scores alone are sufficient to satisfy the first prong of the Section 12.05(c) test. Hence, plaintiff qualifies under the first prong of the Section 12.05(c) test.

**27.** Tr., p. 17–19.

**28.** *Id.* at 19–20.

disabling condition,[29] this leaves unanswered the question of whether his lower back pain presents more than a *de minimis* limitation. As the ALJ's analysis of the medical and testimonial evidence was undertaken in the context of the fourth step of the disability determination, and thus concerned plaintiff's residual functional capacity in light of his IQ and all other claimed conditions, that analysis is not insightful in terms of ascertaining which particular impairment(s) the ALJ found involved more than a *de minimis* limitation. For these reasons, the Court cannot determine whether either of the limitations identified by plaintiff, beyond his low IQ, satisfies the second prong of Section 12.05(c). It is necessary for the Commissioner to make a specific finding in that regard.

### III.

The Court finds that the correct legal standard for determining whether an "additional" impairment is "significant" within the meaning of Section 12.05(c) is whether the "additional" impairment is "severe" within the meaning of 20 C.F.R. Section 404.1520(c). The Court cannot determine from the record, however, whether the impairments alleged by plaintiff satisfy that standard. Plaintiff's motion for judgment on the administrative record is granted in part and otherwise denied. Defendant's motion for judgment on the pleadings is denied. The matter is remanded to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED.

---

**29.** *Id.* at 22 ("The claimant's complaint of totally disabling pain and functional limitations are not credible to the extent alleged.")