Sherry GOODMAN O/B/O Eddie
CHAMBERS, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. CIV.A. 02–G–1779–S.

United States District Court,
N.D. Alabama,
Southern Division.

Feb. 24, 2003.

Darryl W. Hunt, Marilyn H. Macey, Clark & James LLC, Birmingham, AL, for Plaintiff.

Alice H Martin, U.S. Attorney, Lane H. Woodke, U.S. Attorney's Office, Birmingham, AL, Mary Ann Sloan, Sherri G James, Social Security Administration–Office of General Counsel, Atlanta, GA, for Defendant.

## MEMORANDUM OPINION

GUIN, District Judge.

Sherry Goodman, mother of plaintiff Eddie Chambers brings this action pursuant to the provisions of section 205(g) of the Social Security Act, [hereinafter the Act], 42 U.S.C. § 405(g),[1] seeking judicial review of a final adverse decision of the Commissioner of Social Security [hereinafter Commissioner]. Application for SSI as provided under Section 1601 of the Act, 42 U.S.C. §§ 1381 *et seq.* was filed January 19, 2000. This application was denied initially and upon reconsideration. Request for a hearing before an administrative law judge [hereinafter ALJ] [L.K. Cooper, Jr.] was granted, and a hearing was held July 2, 2001. The ALJ's decision to deny bene-

fits was handed down May 20, 2002. Under new prototype rules eliminating Appeal Council review this denial was the final decision of the Commissioner and plaintiff exhausted his administrative remedies. This action for judicial review was filed by and through counsel with this court July 19, 2002.

Plaintiff is an 11 year old male who claims disability onset as of April 30, 1996, based on Attention Deficit Hyperactivity Disorder, Oppositional Defiant Disorder and a conduct disorder. In his findings the ALJ found that additionally plaintiff has "marked" limitation in attending and completing tasks, "less than marked" limitation in acquiring and using information and interacting and relating with others and borderline intellectual functioning. He did not, however, find plaintiff eligible for receipt of SSI benefits.

Records from Eastside Mental Health Center cover the period from June 8, 1999, through April 21, 2000. Diagnoses as of August 23, 1999, follow:

AXIS I:[2] 314.01 Attention Deficit/Hyperactivity Disorder, Combined Type 314.01[3]; 313.81 Oppositional Defiant

---

1. 42 U.S.C. § 1383(c)(3) renders the judicial provisions of 42 U.S.C. § 405(g) fully applicable to claims for Supplemental Security Income [hereinafter SSI].

2. AXIS I: Clinical disorders/ Other Conditions That May be a Focus of Clinical Attention. These disorders are usually first diagnosed in infancy, childhood, or adolescence. *Diagnostic and Statistical Manual of Mental Disorders* (American Psychiatric Association 4th ed.1994) [hereinafter DSM–IV].–IV.

3. Attention–Deficit/Hyperactivity Disorder, Combined Type is used if six or more symptoms of inattention and six or more symptoms of hyperactivity-impulsivity have persisted for at least six months. Most children and adolescents with the disorder have the Combined Type. Inattention may be manifested in the following ways: often fails to give close attention to details or makes careless mistakes in schoolwork, work, or other activities; often

has difficulty sustaining attention in tasks or play activities; often does not seem to listen when spoken to directly; often does not follow through on instructions and fails to finish schoolwork, chores, or duties in the workplace (not due to oppositional behavior or failure to understand instructions); often has difficulty organizing tasks and activities; often avoids, dislikes, or is reluctant to engage in tasks that require sustained mental effort (such as schoolwork or homework); often loses things necessary for tasks or activities (e.g., *toys, school assignments, pencils, books, or tools*); is often easily distracted by extraneous stimuli; and is often forgetful in daily activities. Hyperactivity-impulsivity symptoms are listed as follows: often fidgets with hands or feet or squirms in seat; often leaves seat in classroom or in other situations in which remaining seated is expected; often runs or climbs excessively in situations in which it is inappropriate (in adolescents or adults, may

Disorder[4]

AXIS II:[5] Deferred

AXIS III:[6] None

AXIS IV:[7] Family financial difficulties, family history of substance abuse, absence of father

AXIS V:[8] GAF: 45[9]

Issues addressed by the Eastside Mental Health Center in its Initial Treatment Plan of August 23, 1999, and for which goals were set, included the following:

1) Hyperactive and inattentive

2) Defiant and resistant with authority figures

3) Problematic and negative behavior at school

4) Ineffective parenting skills

A diagnostic assessment of June 8, 1999, indicated the following:

1) When child plays he ends up hurting others not realizing it.

2) Punishment does not work.

3) Plaintiff is never at fault.

4) Plaintiff has had significant depressed moods.

5) Plaintiff has exhibited withdrawn behavior when in his moods.

6) Plaintiff is significantly overactive all the time.

7) Plaintiff has difficulties with attention and concentration at home and at school.

8) Plaintiff has been aggressive toward others in play, and with his brother and mother.

9) Plaintiff takes things that are not his.

10) Plaintiff cannot pay attention for very long.

11) Plaintiff turns things around to keep from getting in trouble.

Clinical Psychologist Gloria G. Henderson, Ph.D. evaluated plaintiff May 30, 2000, when he was nine years old, to examine his functioning level, mental status, and social skills. At the evaluation Eddie presented a full affect and pleasant mood. He put forth a good effort and Dr. Henderson considered the testing results accurate. There were no indications of depression, anxiety, or mania at the time. His attention, insight and judgment, con-

be limited to subjective feelings of restlessness); often has difficulty playing or engaging in leisure activities quietly; is often "on the go" or often acts as if "driven by a motor"; and often talks excessively. Impulsivity symptoms follow: often blurts out answers before questions have been completed; often has difficulty awaiting turn; and often interrupts or intrudes on others (e.g., butts into conversations and games). DSM–IV.

4. Oppositional Defiant Disorder is a recurrent pattern of negativistic, defiant, disobedient, and hostile behavior toward authority figures that persists for at least six months and is characterized by the frequent occurrence of at least four of the following behaviors: losing temper, arguing with adults, deliberately doing things that will annoy other people, blaming others for his own mistakes or misbehavior, being touchy or easily annoyed by others, being angry and resentful, or being spiteful or vindictive. The behaviors must occur more frequently than is typically observed in indi-

viduals of comparable age and developmental level and lead to significant impairment in social, academic, or occupational functioning. In a significant proportion of cases this disorder is a developmental antecedent to Conduct Disorder. DSM–IV.

5. Personality Disorders/Mental Retardation. DSM–IV.

6. General Medical Conditions. DSM–IV.

7. Psychosocial and environmental problems. DSM–IV.

8. Global assessment of functioning. DSM–IV.

9. **Serious symptoms** (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job.) DSM–IV.

centration/mathematical ability, and ability to think abstractly, tested in the mildly impaired range. On the Wechsler Intelligence Scale for Children (WISC–III) plaintiff obtained a Verbal IQ of 74, a Performance IQ of 66, and a Full Scale IQ of 68. Scores placed him in the borderline range of intellectual functioning. She opined that he appeared capable of functioning in an age-appropriate manner communicatively, socially, and behaviorally.

Treating psychiatrist Dr. Otto Eisenhardt completed a "Child Development and Functioning Rating" on plaintiff on June 5, 2001. He opined that plaintiff has a "marked" limitation in attending and completing tasks.

The government has specifically defined the requirements for disability resulting from mental retardation, set forth below:

12.05 *Mental Retardation and Autism:* Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before age 22). (Note: The scores specified below refer to those obtained on the WAIS, and are used only for reference purposes. Scores obtained on other standardized and individually administered tests are acceptable, but the numerical values obtained must indicate a similar level of intellectual functioning.) ...

.    .    .    .    .

D. A valid verbal, performance, or full scale IQ of 60 through 70 and a **physical or other mental impairment**[10] imposing additional and significant work-related limitation of function (emphasis added).

---

**10.** A physical or other mental impairment was equated to the definition of a "severe" impairment described in the Commissioner's regulation in 20 CFR § 404.1520(c) and 1521(a) and (d). *Edwards v. Heckler,* 736 F.2d 625, 629–30 (11th Cir.1984). *See also,*

20 CFR § 404.1525, Appendix 1, ¶ 12.05(D).

■ "The function of a reviewing court is limited to determining whether the Secretary's findings are supported by substantial evidence considering the evidence as a whole." *Mims v. Califano,* 581 F.2d 1211, 1213 (5th Cir.1978). "Substantial evidence is more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983). It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 852 (1971). The court is still responsible for scrutinizing " 'the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding.' " *Boyd v. Heckler,* 704 F.2d 1207, 1209 (11th Cir.1983) (quoting *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir.1982)). The Eleventh Circuit has gone on to state the following:

> Our limited review does not, however, mean automatic affirmance, for although we defer to both the Secretary's fact-finding and her policy judgments, we must still make certain that she has exercised reasoned decision making. To this end, we evaluate the Secretary's findings in light of the entire record, not only that evidence which supports her position.

*Owens v. Heckler,* 748 F.2d 1511 (11th Cir.1984).

■ The court must further consider whether the decision of the Commissioner contains a material error of law. In *Walk-*

---

*Edwards by Edwards v. Heckler,* 755 F.2d 1513, 1515 (11th Cir.1985) ("An impairment imposes significant limitations when its effect on a claimant's ability to perform 'basic work activities' is more than slight or minimal.")

*er v. Bowen,* 826 F.2d 996, 999 (11th Cir. 1987), the court held:

> Despite this limited review, we scrutinize the record in its entirety to determine the reasonableness of the secretary's factual findings. *Bridges,* 815 F.2d at 624; *Arnold v. Heckler,* 732 F.2d 881, 883 (11th Cir.1984). No similar presumption of validity attaches to the Secretary's legal conclusions, including determination of the proper standards to be applied in evaluating claims. *Wiggins v. Schweiker,* 679 F.2d 1387, 1389 (11th Cir.1982).

■ Having evaluated the evidence, the court holds that the evidence does not support the decision denying disability benefits. Improper legal standards were applied. The ALJ ignored Listing 112.05D.

The court holds that plaintiff is entitled to receipt of SUI benefits. Plaintiff has a Full Scale IQ of 68. He has been diagnosed with Attention Deficit/Hyperactivity Disorder and Oppositional Defiant Disorder. He is inattentive, defiant and shows problematic and negative behavior at school. He hurts other children unintentionally. He has serious depressed moods. He is aggressive toward others. He takes things that are not his. Psychiatrist Eisenhardt opined he has a "marked" limitation to attending and completing tasks. This "marked" limitation qualifies plaintiff for benefits under *Edwards,* previously cited.[11] His GAF score of 45 indicates he has serious symptoms affecting social, occupational, or school functioning. Plaintiff clearly meets the standards set in Listing 12.05D and is entitled to benefits. The decision of the Commissioner is REVERSED.

An order consistent with this opinion is being entered contemporaneously herewith.

*ORDER*

In conformity with and pursuant to the memorandum opinion entered contemporaneously, it is

ORDERED, ADJUDGED and DECREED that the decision of the Commissioner of Social Security be and it hereby is REVERSED, and the case is REMANDED to the Commissioner with instructions that the plaintiff be granted the benefits claimed.

It is FURTHER ORDERED that the Commissioner withhold from payments which he may determine are due plaintiff under this order an amount not to exceed 25 percent of the total amount of disability benefits to which the plaintiff is entitled, pursuant to the provisions of section 206 of the Social Security Act, as amended 42 U.S.C. § 406(b). The Commissioner is directed to advise the court of the amount withheld so that the matter may be set for final determination of the amount of attorney's fees to be allowed plaintiff's counsel for services rendered in representing the plaintiff in this cause.

---

**11.** See n. 10.