[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12356
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-00181-MP-GRJ


LUIS A. RODRIGUEZ,

                                                    Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

                                                    Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(December 31, 2015)

Before WILLIAM PRYOR, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Luis Rodriguez appeals from the district court's order affirming the Administrative Law Judge's ("ALJ") denial of his application for disability insurance benefits and supplemental security income (collectively, "disability benefits"), 42 U.S.C. §§ 405(g), 1383(c)(3).  On appeal, Rodriguez argues that the ALJ erred in determining, at step three of the sequential evaluation, that his mental impairments did not meet or equal the requirements of Listing 12.05(B) or (C), relating to intellectual disability.  After careful review, we affirm.

In Social Security appeals, we review whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Winschel*, 631 F.3d at 1178 (internal quotation marks omitted).  Our deferential review precludes us from deciding the facts anew, making credibility determinations, or re-weighing the evidence.  *Id.*  Consequently, we must affirm the agency's findings if they are supported by substantial evidence, even if the evidence preponderates against them.  *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

A claimant must be under a disability to be eligible for disability benefits. 42 U.S.C. §§ 423(a)(1), 1382(a)(1)-(2).  In relevant part, a claimant is under a

2

disability if he is unable to engage in substantial gainful activity due to a medically determinable impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The claimant bears the burden of proving his disability, and he is responsible for producing evidence in support of his claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

The Commissioner uses a five-step, sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). First, the claimant must show that he is not currently engaged in substantial gainful activity. *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At the second step, the claimant must show that he has a severe impairment. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A severe impairment is an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§ 404.1520(c), 416.920(a)(4)(c). Third, the claimant has the opportunity to show that the impairment meets or equals the criteria contained in one of the Listings of Impairments. *See id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant meets that burden, the sequential evaluation process terminates, and the claimant is presumptively determined to be disabled. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). If no listing is met, then, at the fourth step, the ALJ considers the

claimant's residual functional capacity and the claimant's past relevant work to determine if he has an impairment that prevents him from performing his past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), (e), 416.920(a)(4)(iv), (e). Finally, once a claimant establishes that he cannot perform his past relevant work due to some severe impairment, the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The ALJ must consider the combined effects of a claimant's impairments throughout the disability determination process. *Davis v. Shalala*, 985 F.2d 528, 532 (11th Cir. 1993).

Rodriguez alleges that the ALJ committed error at step three of the analysis. In particular, Rodriguez contends that he met Listing 12.05(B) or (C), relating to intellectual disability.[1]

To qualify under Listing 12.05, Rodriguez must first meet the diagnostic criteria in Listing 12.05's introductory paragraph. That is, Rodriguez must show that he has (i) significantly subaverage general intellectual functioning (ii) with deficits in adaptive functioning (iii) that manifested before age twenty-two.

---

[1] Effective September 3, 2013, the Social Security Administration replaced the term mental retardation with the term intellectual disability as a listed impairment. Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46499 (Aug. 1, 2013) This change was made because "the term 'mental retardation' has negative connotations," and "has become offensive to many people." *Id.* at 46499. But this change "d[id] not affect the actual medical definition of the disorder or available programs or services." *Id.* at 49500. We follow the agency's new nomenclature.

4

*Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997); 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 12.00(A), 12.05.  A valid IQ score of below 70 creates a rebuttable presumption that a claimant manifested deficits in adaptive functioning before age twenty-two.  *Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001).

Second, Rodriguez must meet the specific severity requirements of one of four subparagraphs, A through D.  20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05. Rodriguez contends that he meets or equals subparagraphs B and C.  Listing 12.05(B) requires a claimant to have "a valid verbal, performance, or full scale IQ of 59 or less."  *Id.* § 12.05(B).  Listing 12.05(C) requires a claimant to show: (1) a valid verbal, performance, or full scale IQ of 60 through 70; and (2) a physical or other mental impairment imposing an additional and significant work-related limitation of function.  *Id.* § 12.05(C).

Here, Rodriguez facially met the requirements of subparagraph C of Listing 12.05.  He had a valid full-scale IQ score of 62 and an additional severe impairment—bipolar disorder.  *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) ("Generally, a claimant meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work

5

activities."). Under our precedent, a "severe" impairment, for purposes of step two, has a "significant work-related limitation of function" under 12.05(C).[2] *Id.*; *Davis*, 985 F.2d at 531-32; *see also Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985); *Edwards v. Heckler*, 736 F.2d 625, 629 (11th Cir. 1984). The record also does not conclusively show that Rodriguez did not meet or equal Listing 12.05(B), because he scored a 59 on one of the four index scores (Processing Speed) on the Wechsler Adult Intelligence Scale (WAIS) IV.[3] 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(D)(6)(c) ("In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, [the SSA uses] the lowest of these in conjunction with 12.05.").

Nevertheless, "a valid I.Q. score need not be conclusive of [intellectual disability] where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." *Lowery*, 979 F.2d at 837; *see also Hodges*, 276 F.3d at 1268-69 (holding that the Commissioner may rebut the presumption of adaptive deficits before age twenty-two by presenting evidence relating to a claimant's daily life). Here, the ALJ permissibly relied on

---

[2] Therefore, the ALJ erred to the extent that he found that Rodriguez did not have a mental impairment imposing an additional and significant work-related limitation of function. The error is harmless, however, for reasons we explain below.

[3] Listing 12.05(B) does not directly correspond to the WAIS-IV, but appears to be based on an earlier version of the test, the WAIS-III.

6

Rodriguez's daily activities and work history to conclude that he did not manifest deficits in adaptive functioning consistent with intellectual disability. Thus, the ALJ implicitly concluded that Rodriguez did not meet the diagnostic criteria in the introductory paragraph of Listing 12.05. *See Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) (holding the ALJ implicitly found that the claimant did not meet a Listing because it was clear from the record that the ALJ had considered the relevant law and evidence).

We find that substantial evidence supports the ALJ's determination that Rodriguez did not meet the diagnostic criteria of Listing 12.05 because he did not have deficits in adaptive functioning consistent with intellectual disability. Rodriguez testified that he attended mainstream high-school classes through the eleventh grade without any specialized educational assistance. He also testified that he assisted his wife with household chores such as cooking and laundry, that he did the grocery shopping for his household, that he attended church twice per week, and that he had a driver's license.[4] Rodriguez's work history also supports the ALJ's determination that he did not have deficits in adaptive functioning. According to the vocational expert, Rodriguez's work history included jobs at the skilled and semi-skilled level. Rodriguez also had worked at substantial gainful activity levels for many years, and he did not allege that his intellectual functioning

---

[4] Rodriguez lived with his wife and three children.

7

had declined in recent years.  In view of these facts, we cannot say that the ALJ's decision is not supported by substantial evidence in the record, even though other evidence in the record may support Rodriguez's arguments.  *See Winschel*, 631 F.3d at 1178.

Rodriguez also argues that ALJs should not be permitted to make assessments about "adaptive functioning" without some objective measurement of such functioning.  Rodriguez specifically contends that ALJs should be required to develop the record to include a score based on the Vineland Adaptive Behavior Scale ("VABS") when a claimant's IQ scores are low enough to trigger Listing 12.05.  However, although the Social Security regulations do not define "deficits in adaptive functioning," the Diagnostic and Statistical Manual of Mental Disorders states that adaptive functioning refers "to how well a person meets standards of personal independence and social responsibility, in comparison to others of similar age and sociocultural background.  Adaptive functioning involves adaptive reasoning in three domains: conceptual, social, and practical."  AM. PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 37 (5th ed. 2013).  Moreover, neither our precedent nor the Social Security regulations require ALJs to assess adaptive functioning by reference to a VABS score, and we decline to impose such a requirement.  *See, e.g.*, *Hodges*, 276 F.3d at 1268-69; *Lowery*, 979 F.2d at 837.

Consequently, we affirm the denial of disability benefits.

**AFFIRMED.**