**James A. HUTCHISON,
Plaintiff-Appellant,**

v.

**Otis R. BOWEN, Secretary of Health
and Human Services,
Defendant-Appellee.**

No. 84–8724.

United States Court of Appeals,
Eleventh Circuit.

April 25, 1986.

Bruce K. Billman, Macon, Ga., for plaintiff-appellant.

Frank L. Butler, Asst. U.S. Atty., Macon, Ga., for defendant-appellee.

Before HILL and CLARK, Circuit Judges, and HOBBS *, Chief District Judge.

HILL, Circuit Judge.

Appellant appeals the denial of his claim for Social Security disability benefits. Specifically, he claims the Secretary erred in failing to properly apply the listing for ischemic heart disease set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1, section 4.04 ("the listings") and in the use of the medical-vocation guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, ("the grids"), to find him not disabled. Appellant also disputes the district court's finding on remand that appellant's proffer did not constitute substantial evidence of a lesser ability to adapt to a new work environment than that presumed by the grids for a person of his age.

* Honorable Truman M. Hobbs, Chief U.S. District Judge for the Middle District of Alabama, sitting by designation.

## FACTS

Appellant James A. Hutchison was born on July 25, 1927 and was 53 years old at the time he suffered a myocardial infarction in March of 1981. On June 17, 1981, appellant filed an application for disability insurance benefits. The Social Security Administration subsequently determined that appellant was not disabled and affirmed this determination upon a request for reconsideration. Appellant requested a hearing to review the denial of his claim. At this hearing, conducted on October 15, 1981, results from a coronary catheterization and subsequent electrocardiograms were introduced which indicated that appellant suffered from a complete right bundle branch block, occasional premature ventricular contractions of the heart, and several coronary arteries occluded to varying degrees. Appellant testified he had a seventh grade education, had worked as a truck driver for 28 years, and had last worked on March 19, 1981. He further testified that he continues to experience chest pain and doctors had advised him to retire from his job because of his medical condition. On February 22, 1982, the Administrative Law Judge issued his decision ruling that appellant was not entitled to disability benefits.

After the Appeals Council denied a request for review, appellant challenged the Secretary's decision before the district court, which upheld the Secretary's decision. On appeal to this court, we granted the Secretary's motion to remand to the district court for proceedings pursuant to *Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984). Appellant subsequently made a *Reeves* proffer to the district court along with a motion to have the case remanded to the Secretary. The district court found that appellant's proffer did not constitute substantial evidence of a lesser ability to adapt to a new work environment than that presumed by the grids for a person of his

age and denied appellant's motion. This appeal followed.

## DISCUSSION

20 C.F.R. § 404.1520 (1985) provides for a sequential evaluation process to determine whether a claimant is entitled to Social Security disability benefits. The Secretary employs the following step-by-step analysis in evaluating a claimant's disability claims: (1) whether the claimant is engaged in gainful employment; (2) whether claimant suffers from a severe impairment which has lasted or can be expected to last for a continuous period of at least twelve months; (3) whether claimant suffers from any of the impairments set forth in the listings of impairments provided in Appendix 1; (4) whether the impairments prevent claimant from returning to his previous work; and (5) whether claimant is disabled in light of age, education, and residual functional capacity. *Ambers v. Heckler*, 736 F.2d 1467, 1470–71 (11th Cir.1984). Should a person be determined disabled or not disabled at any stage of the above analysis, further inquiry pursuant to the analysis ceases. Accordingly, if a claimant's condition meets an impairment set forth in the listings, the claimant is adjudged disabled without considering age, education, and work experience. 20 C.F.R. § 404.1520(d).

In the present action appellant contends that the ALJ did not properly consider whether appellant met any of the impairments listed in Appendix 1 and that this failure to follow the sequential analysis set forth in 20 C.F.R. § 404.1520 constitutes harmful error. We find, however, that while the ALJ did not explicitly state that the appellant's impairments were not contained in the listings, such a determination was implicit in the ALJ's decision. The ALJ was obviously familiar with the sequential evaluation process. His statement of the relevant law recognized that an affirmative determination regarding the applicability of any Appendix 1 listing, the third step of the disability analysis, would require a determination that the appellant

was disabled. Yet the record indicates that the ALJ reached the final two steps of the analysis when he determined that the appellant was unable to perform his past work and that he did have the residual capacity for at least light work. While Appendix 1 must be considered in making a disability determination, it is not required that the Secretary mechanically recite the evidence leading to her determination. There may be an implied finding that a claimant does not meet a listing. *Edwards v. Heckler*, 736 F.2d 625, 629 (11th Cir. 1984). We thus consider it clear that the ALJ, in reaching the fourth and fifth steps of the disability analysis, implicitly found that appellant did not meet any of the Appendix 1 impairments.

Appellant alternatively asserts that even if the Secretary properly addressed and impliedly found that appellant did not meet any of the listings, there does not exist sufficient evidence to support such a finding. The proper standard in reviewing the Secretary's findings of fact is whether there is substantial evidence to support those findings and inferences. *Simpson v. Schweiker*, 691 F.2d 966, 969 (11th Cir. 1982). In undertaking this review, we observe initially that the applicable Appendix 1 listings vary according to whether the results of an acceptable treadmill test are available. We conclude that the results of the treadmill stress test performed on appellant and considered by the ALJ were acceptable within the meaning of the Secretary's regulations, as set forth in section 4.00(F) and (G) of Appendix 1, and thus the applicable listings are those found in section 4.04(A).

As support for our conclusion, we note that the record contains clear legible copies of the test performed, appropriately labeled with appellant's name and the date of the test. The copies indicate the end of each of the three stages of Bruce/Protocol attained, when appellant was standing and hyperventilating, that the test was terminated after nine minutes, and the appellant's status at 12, 14, 15, 18, 21, and 22 minutes. Further, examination of appro-

priate tables reveals that appellant achieved more than 85 per cent of the maximum predicted heart rate.[1]

The applicable listings determined, the appropriate analysis is whether substantial evidence exists pursuant to the results of the treadmill test that appellant failed to meet any of the four listings described in 4.04(A) of Appendix 1 for ischemic heart disease.[2] The exercise stress test revealed a heart rate of 165 without angina. From appellant's resting EKG of the anterior myocardial infarction and complete right bundle branch block he experienced no further ST–T changes. Appellant experienced normal blood pressure response to the exercise and developed no chest pain. The examining physician conducting the test assessed the test as negative for myocardial ischemia. The test was discontinued, not because of cardiac problems, but because of shortness of breath and fatigue. Though developing what the examining physician termed "occasional" premature ventricular contractions and some ventricular bigamy, this resolved after nine to ten additional minutes of recovery and in light of the physician's assessment regarding a lack of myocardial ischemia must be considered as insignificant. The right bundle branch block from which appellant suffers does not fall within the parameters of the section 4.04(A) listing regarding second and third degree heart blocks. There exists substantial evidence that appellant met none of the Appendix 1 listings.

Appellant's remaining contentions involve alleged errors in application of the medical-vocational guidelines set forth in 20 C.F.R. Part 404, Subpart P, Appendix 2. If a claimant does not meet a listing set forth in Appendix 1, then to establish that he is disabled he must show that he has an impairment serious enough to prevent him from returning to his previous job. If a claimant carries that burden, as appellant did here, then the Secretary has a burden to prove that the claimant is capable, considering his age, education and work experience, of engaging in another kind of substantial gainful work that exists in the national economy. It is at this stage that the grids come into play. The grids apply in the following fashion:

The ALJ first ascertains a claimant's 'residual functional capacity,' which involves findings as to the claimant's ability to lift weight, sit, stand, push, and pull. For claimants found capable of sedentary, light, or medium work, the regulations provide three tables, one corresponding to each level of residual functional capacity. These tables account for the vocational factors of age, education, and work experience, which are mentioned in the statute. The ALJ determines a claimant's age, education, and work experience and reads from the appropriate table and line the conclusion whether the claimant is disabled. (Citations omitted)

*Broz v. Schweiker,* 677 F.2d 1351 (11th Cir.1982), *vacated and remanded on other grounds sub nom. Heckler v. Broz,* 461 U.S. 952, 103 S.Ct. 2421, 77 L.Ed.2d 1311, *adhered to,* 711 F.2d 957 (11th Cir.1983), *modified on other grounds,* 721 F.2d 1297 (11th Cir.1983).

---

**1.** During the exercise stress test appellant achieved a maximum heart rate of 165. The publication *Exercise Testing and Training of Apparently Healthy Individuals; A Handbook for Physicians* (1972), published by the Committee on Exercise of the American Heart Association, shows that a 50-year old has a maximum heart rate of 184 and a 55 year old a heart rate of 182. The tables further provide that 90 per cent of the predicted rate for a fifty-year old is 166 and for a fifty-five year old is 164. As appellant was fifty-three at the time of this test, his achievement of a heart rate of 165 was clearly more than 85 per cent of the maximum predicted heart rate.

**2.** The impairments listed in section 4.04(A) are:

(1) Horizontal or down sloping ischemic depression of the ST segment to 1.0mm or greater, clearly discernable in at least 2 consecutive complexes which are on a level base line in any lead; or

(2) premature ventricular systoles which are multiform or bydirectional or sequentially inscribed (three or more); or

(3) ST segment elevation to 3mm or greater; or

(4) development of second or third degree heart block....

As is evidenced by this procedure, the ALJ's determination regarding whether claimant is capable of sedentary, light, or medium work impacts directly on the determination of disability or lack thereof as it controls which grid is applicable. Appellant alleges that no substantial evidence supports the ALJ's finding that the appellant is capable of a full range of light work and thus that the result obtained through the ALJ's use of the Appendix 2 tables pertaining to light work is incorrect. We find this contention without merit. The appellant testified at the hearing that he could stand for 30 minutes and could sit, stand and walk for a period of at least four hours. As discussed previously, the exercise stress test produced a normal blood pressure response, a heart rate of 165 without angina, and no further ST–T changes and was assessed as negative for myocardial ischemia. While claimant suffers from lingering pain from his condition, there was no evidence introduced to show any further cardiac complications, and treating physicians felt the patient could be managed medically. 20 C.F.R. § 404.1567(b) (1985) provides that light work involves lifting of no more than 20 pounds at a time with frequent lifting and carrying of objects weighing up to 10 pounds. Substantial evidence exists to support the ALJ's finding that appellant was capable of performing this type activity.

The appellant further contends that the district court erred when, on remand granted pursuant to *Reeves v. Heckler*, 734 F.2d 519 (11th Cir.1984), it held that the appellant's evidence did not satisfy the *Reeves* proffer and thus denied appellant's motion to remand to the Secretary. *Reeves* held that before the Secretary may use the age factor as applied in the grids as evidence of the claimant's ability to adapt to a new work environment, the claimant must be afforded an opportunity to proffer substantial credible evidence that his ability to adapt is less than the level established under the grids for persons of his age capable of his residual functional capacity. *Reeves v. Heckler*, 734 F.2d at 525. Appellant submitted a letter from Bernard C. Murdoch, a vocational expert and licensed psychologist, which stated in part: "Mr. Hutchison's vocational capacities, after he exhibited his problems from his heart disease, were atypical of his age group. In fact at the age of 53 and 54 his vocational capacities would have been more nearly those of persons many years older." The district court characterized Dr. Murdoch's statements as focusing on appellant's "exertional limitations" and concluded that such evidence did not meet the *Reeves* test.

We agree with the district court's assessment. Murdoch's letter addressed appellant's exertional limitations arising from his heart condition. Appellant thus attempts to rely on the impairment which created the disability in the first instance in establishing his lesser ability to adapt. Such a strategy ignores that these limitations were among the factors which led the ALJ to conclude that appellant retained the residual functional capacity for only light work. In fact, the Murdoch letter addressed only appellant's ability to do light work, an issue that was not before the district court. On remand, appellant had the burden of producing substantial evidence of a lesser ability to adapt. *Reeves v. Heckler*, 734 F.2d at 526. We hold that he failed to meet this burden.

Appellant alleges that the Secretary mechanically applied the age factor in violation of *Garner v. Heckler*, 735 F.2d 1291 (11th Cir.1984). While we do not hold that the application here was within the scope of that labelled by *Garner* as mechanical, as the claimant failed on remand to make a *Reeves* proffer any alleged mechanistic use of the grids would be harmless error. *Garner v. Heckler*, 735 F.2d 1291, 1292 (11th Cir.1984). Having found all the appellant's contentions without merit, the decision of the district court is

AFFIRMED.

HOBBS, Chief District Judge concurring specially:

This 1981 application for social security benefits has been before this court two

times. The first time the parties were sent back to the district court for a determination as to whether the case had been decided in accordance with *Reeves v. Heckler,* 734 F.2d 519 (11th Cir.1984). After appellant had made a *Reeves* proffer on remand, the district court found that the proffer did not constitute substantial evidence of a lesser ability to adapt to a new work environment. On this second appeal to this court, no judge believes that the case should be reversed on the basis of the *Reeves* factor.

The dissenting opinion, however, would again remand the case, this time for the ALJ to make an express finding as to whether he found that Mr. Hutchison's disability met a listed impairment. I agree with Judge Hill that the ALJ by clear implication made the determination that the disability did not meet a listed impairment. I also agree with Judge Hill that there is substantial evidence to support this determination.

I am unwilling to send this case—now nearly five years old—back for an ALJ determination which I feel is certain to result in nothing more than further lengthy delay with the same result. Mr. Hutchison is presently fifty-eight years of age. It may be that were he to bring a new claim at this age, the same disabilities that led to his disqualification in 1982—the date of his ALJ hearing—would now lead to his qualification for benefits.

I concur in the opinion of Judge HILL.

CLARK, Circuit Judge, dissenting:

In attempting to determine whether substantial evidence supports the administrative law judge's ("ALJ") implicit finding that Mr. Hutchison's impairment is not listed in the regulations, the majority has conducted extensive and difficult fact-finding. Because we are not competent to interpret the medical evidence in this case and cannot review the ALJ's ultimate finding with respect to step three of the sequential evaluation without more particular findings explaining how Hutchison's impairment relates to the listings, we should remand this case so that the ALJ may set down his reasons for rejecting Hutchison's claim of disability under the listings.

The majority appears to assume that once it deduces that an experienced ALJ who reaches step four of the sequential evaluation must have rejected any claim of disability at step three, it is free as a reviewing court to determine whether substantial evidence supports the implied finding. However, the issue in this case is not whether we can, as a logical matter, assume that there exists an implied finding for us to review. Rather, the issue is whether an appellate court should undertake to reconstruct the complex fact-finding that must underlie a conclusory finding of ultimate fact (implicit or not) in the name of reviewing the conclusory finding. The majority does not pause to reflect upon this issue but moves ahead to weigh the evidence in the first instance. In so doing, the majority steps out of its role as a reviewing court.

As the majority opinion reveals, determining whether substantial evidence supports a finding that Hutchison's impairment is not described in the listings requires resolution of a series of complex issues of medical fact. The majority has resorted to conducting its own medical research to reach its decision. *See, e.g.,* Majority op. at 1464 & n. 1. We have not the expertise to undertake such a review with any confidence. Just as importantly, we cannot expect litigants to trust in the justice of appellate decisions that depend on knowledge and experience outside the scope of our appellate expertise.

Moreover, although we may be able to deduce that the ALJ rejected Hutchison's step three claim, we cannot be as certain that the ALJ gave the evaluation the careful attention required to reach the correct conclusions. Part of our role as a reviewing court must be to ensure that fact-finding is conducted in a manner that minimizes error and justifies the deference we accord the finder of fact. We fail to acknowledge that function when we provide the explanation needed to affirm the fact

finder's conclusions instead of returning the case to allow the fact finder to make the requisite underlying findings.

In *Todd v. Heckler*, 736 F.2d 641 (11th Cir.1984), the claimant asserted that her impairment fell under the same listings—for ischemic heart disease—claimed by Hutchison to describe his impairment. The ALJ in that case had similarly neglected to record any findings with respect to the relationship of Todd's impairment to the listings but had reached step five of the sequential evaluation. Although the record contained medical evidence in the form of electrocardiogram reports, the court did not attempt to review any step three finding implicit in the ALJ's decision to go on to steps four and five. Instead, it remanded the case to allow the ALJ to fulfill its "duty to develop the facts fully and fairly." *Id.* at 642. The virtually identical facts of this case demand the same result.

*Edwards v. Heckler*, 736 F.2d 625 (11th Cir.1984), does not support, or require, the majority's decision to conduct the fact-finding necessary to review the ALJ's conclusion at step three. In *Edwards*, the court was also faced with a record silent as to the status of the claimant's impairment under the listings. The ALJ had found, however, that the claimant did not have a "severe impairment." Because the court determined that the definition of "severe impairment" also described the requirements of the particular listing there at issue, it could conclude that the finding that the impairment was not severe amounted to a finding that the claimant did not meet the listing requirements. The court could be certain that the ALJ had conducted the evaluation required at step three because he had made another finding requiring the same analysis. It did not have to make its own findings to review the ALJ's decision. Furthermore, review of the implicit finding in *Edwards* did not depend on the kind of knowledge and experience that must guide interpretation of the medical evidence and listings involved in this case.

My conviction that we should not review the ALJ's conclusory finding in this case is strengthened by the difficulty I have experienced assessing whether to concur in the majority's analysis of the medical evidence. For instance, the majority finds that the treadmill test is acceptable—a critical finding, for were the test unacceptable, the § 4.04 B [1] listings would apply and there is no dispute that Hutchison is disabled under § 4.04 B 7. My own review of that portion of the record purported to be relevant to the treadmill test leads me to suspect that the electrocardiogram tracings are unacceptable under § 4.00 F 2.

As an initial matter, I cannot be sure that the tracings claimed by the Secretary to reflect the results of the treadmill test (Record, Vol. 2 at 108–24) are in fact the correct tracings. The date on the first strip is illegible, so it is not possible to determine whether the tracings were obtained on the day the test was performed. The tracings are not otherwise labeled as part of the treadmill test and they are separated in the record by several unrelated documents from other documents that pertain to the treadmill test.

If these are the correct tracings, it is not clear that they meet the criteria for acceptability set forth in the regulations. Section 4.00 F 2 provides that "[e]lectrocardiograms obtained in conjunction with exercise tests must include the original tracings or a legible copy of the appropriate leads.... [T]he standardization must be inscribed on the tracings and the strips must be labeled appropriately, including the times recorded." I can find no marking that might be the "standardization" that is to be "inscribed on the tracings," and Hutchison claims no such standardization is there to be found. Other tracings found in the record contain information that is absent from the alleged treadmill test tracings. *Compare* Record, Vol. 2, at

---

**1.** All regulations cited may be found in 20 C.F.R. pt. 404, subpart P, app. 1, unless otherwise noted.

96–101. The times do not appear to be recorded, and I have no basis upon which to determine whether the strips are otherwise "labeled appropriately."

Even less can I be sure the majority's determination that Hutchison's impairment is not included among the § 4.04 A listings is correct. The conclusion reached by the majority, that "there exists substantial evidence that appellant met none of Appendix 1 listings," Majority op. at 1464, is not deducible from the explanation immediately preceding that conclusion. Furthermore, were Hutchison's impairment clearly not included among the listings, the ALJ would still be required to find that Hutchison's impairment is not "equal to a listed impairment(s)." 20 C.F.R. § 404.1520(d). As it stands, the medical evidence must be interpreted and translated into the language of the listings to determine whether Hutchison's impairment is described therein. Because we are not competent—as appellate judges—to perform this task, I cannot be confident that substantial evidence supports the finding that Hutchison's impairment does not fall within the listings.

My aim is not to convince anyone that the majority's factual conclusions are wrong, but to illustrate the difficulties created by our lack of expertise. Of all the steps in the evaluation, the third is the most technical and the most difficult for an appellate court to review without particular explanatory findings. The majority's attempt to find substantial evidence to support the ALJ's implicit finding that Hutchison was not disabled under the listings is unconvincing for that reason. This case should be remanded to the ALJ with instructions to reconsider step three of the evaluation of Hutchison's claim and record particular findings to explain its decision.