[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12236
Non-Argument Calendar
_____

D.C. Docket No. 1:09-cv-20089-DLG

ROSA H. PRINCE,

                                                        Plaintiff-Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

                                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 2, 2014)

Before WILSON, ANDERSON and DUBINA, Circuit Judges.

PER CURIAM:

Appellant Rosa Prince appeals the district court's order affirming the Commissioner of Social Security Administration's denial of disability insurance benefits order 42 U.S.C. § 405(g).  On appeal, Prince argues that the Administrative Law Judge's ("ALJ") finding that her impairments did not meet or equal an impairment included in the Listing of Impairments is not supported by substantial evidence because her coronary artery disease met Listing 4.04C.  She also argues that the ALJ failed to develop the record and erred in not seeking testimony from a medical expert.  After reviewing the record and reading the parties' briefs, we affirm.

## I.

We review the ALJ's decision for substantial evidence, but its application of legal principles *de novo.  Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*  We may not "decid[e] the facts anew, mak[e] credibility determinations, or re-weigh[] the evidence."  *Id.*  When the Appeals Council denies review of the ALJ's decision, we review the ALJ's decision as the Commissioner's final decision.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

In order to be eligible for disability insurance benefits, a claimant must show that he became disabled on or before the date he was last insured.  *Moore*, 405 F.3d

at 1211; *see also* 42 U.S.C. § 423(a)(1)(A).  To determine whether a claimant is disabled, the reviewing authority follows a five-step process outlined in the Social Security Regulations.  20 C.F.R. § 404.1520(a)(4).  The claimant bears the burden of proving that he is disabled.  *Id.* § 416.912(a).  Under the first step, the claimant has the burden to show that he is not currently engaged in substantial gainful activity.  *See* 20 C.F.R § 404.1520(a)(4)(i).  At the second step, the claimant must show that he has a severe impairment.  *See id.* § 404.1520(a)(4)(ii).  The regulations define a severe impairment as an "impairment or combination of impairments which significantly limit[] [the claimant's] physical or mental ability to do basic work activities."  *Id.* § 404.1520(c).  Third, the claimant has the opportunity to show that the impairment meets or equals the criteria contained in one of the Listings of Impairments.  *See id.* § 404.1520(a)(4)(iii).  At the fourth step, if the claimant cannot meet or equal the criteria in one of the Listings, the ALJ considers the claimant's residual functional capacity and the claimant's past relevant work to determine if he has an impairment that prevents him from performing his past relevant work.  *See id.* § 404.1520(a)(4)(iv).  Finally, once a claimant establishes that he cannot perform his past relevant work due to some severe impairment, the burden shifts to the Commissioner to show that significant numbers of jobs exist in the national economy which the claimant can perform.  *See id.* § 404.1520(a)(4)(v).

3

The claimant bears the burden of demonstrating that an impairment meets or equals a listed impairment. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991). To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. 20 C.F.R. § 404.1512(a)-(d); *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002). An impairment that meets only some of the Listing requirements, no matter how severe, does not qualify. *See* 20 C.F.R. § 416.925(c)(3)(noting that impairment must meet all of the criteria of that Listing). The ALJ's finding as to whether a claimant does or does not meet a listed impairment may be implied from the record. *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) (holding that the ALJ implicitly found that the claimant did not meet a Listing because it was clear from the record that the ALJ had considered the relevant law and evidence). Furthermore, while the ALJ must consider the Listings in making its disability determination, "it is not required that the [ALJ] mechanically recite the evidence leading to her determination." *Id.*

Listing 4.04C for ischemic heart disease is described as symptoms due to myocardial ischemia, while on prescription medication, with one of the following, including but not limited to:

> Coronary artery disease, demonstrated by angiography (obtained independent of Social Security disability evaluation) or other appropriate medically acceptable imaging, and in the absence of a timely exercise tolerance test or a timely normal drug-induced stress

test, an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise tolerance testing would present a significant risk to the individual, with both 1 and 2:

1.    Angiographic evidence showing:

a. 50 percent or more narrowing of a nonbypassed left main coronary artery; or

b. 70 percent or more narrowing of another nonbypassed coronary artery; or

c. 50 percent or more narrowing involving a long (greater than 1 cm) segment of a nonbypassed coronary artery; or

d. 50 percent or more narrowing of at least two nonbypassed coronary arteries; or

e. 70 percent or more narrowing of a bypass graft vessel; and

2.    Resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.04C. Ischemic heart disease results when "one of more . . . coronary arteries is narrowed or obstructed or, in rare situations, constricted due to vasospasm, interfering with the normal flow of blood to your heart muscle." *See id.* § 4.00E1. The term nonbypassed means "the blockage is in a vessel that is potentially bypassable . . . large enough to be bypassed and considered to be the cause of [] ischemia." *See id.* § 4.00E9h.

"[T]he testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v.*

5

*Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The ALJ is required to give specific reasons for according less weight to a treating physician's opinion.  *Id.* Good cause for giving less weight to a treating physician's opinion exists where the physician's opinions were conclusory or inconsistent with their own medical records.  *Id.*

The ALJ must "articulate specific reasons for questioning the claimant's credibility" if subjective pain testimony is "critical" to the claim.  *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).  "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."  *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).

## II.

We conclude from the record that substantial evidence supports the agency's implicit conclusion that Prince's impairment or combination of impairments did not meet or equal Listing 4.04C.  Prince's cardiac catheterization on January 1, 2005, showed a total occlusion of her circumflex artery.  Prince argues that this alone shows that she meets the first prong of Listing 4.04C because it shows "70 percent or more narrowing of another nonbypassed coronary artery."  However, this is inconsistent with Dr. Vignola's letter dated April 28, 2005, in which he stated that "[n]on-critical disease was seen in the circumflex."  Moreover, doctors never placed a stent in Prince's circumflex artery, despite noting it, and they also

6

reported that after stents were placed in other coronary arteries, imaging indicated myocardial ischemia was unlikely, which is consistent with the circumflex occlusion not qualifying as "nonbypassed."  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.00E9h.

Nevertheless, even if Prince met the first prong of Listing 4.04C, the ALJ concluded that Prince did not meet the second prong because her testimony regarding the intensity, persistence, and limiting effects of her impairments was not credible and she did not have serious limitations on her daily life activities. The ALJ articulated specific reasons for this credibility finding, including that: (1) Prince's alleged disabling symptoms were contradicted by her own testimony regarding her wide range of daily activities; (2) private investigators in the 2005 Aetna investigation observed Prince traveling to stores, driving and fueling her vehicle, walking around parking lots, and offering to show rental properties; and (3) the medical evidence overall showed "no abnormalities," "very good results," "normal gait" and "mild to moderate" dysfunction.  The ALJ further found that Prince made "deliberate misrepresentations," which were "apparently motivated by secondary gain."

The ALJ's reasons were supported by substantial evidence because among other things: (1) the March 2005 thalium stress test results were normal; (2) her cardiologist Dr. Vignola's letter dated April 28, 2005, noted "[n]on-critical

7

disease" in Prince's circumflex artery; (3) at her May 2005 follow-up Prince denied "shortness of breath, chest pain or palpitations"; (4)  cardiologist Dr. Lamas reported that Prince "is free of angina" and that Prince's new left upper chest pain was exercise-related; (5) Dr. Lamas's letter dated June 22, 2005, indicated that Prince's "angina remain[ed] resolved"; (6) an August 2005 stress test showed that myocardial ischemia was unlikely; (7) Prince testified that she drove approximately two miles per day to her daughter's school and to doctor's appointments, and that she did basic chores such as making beds; and (8) a 2005 insurance investigation of Prince over a three day non-consecutive period showed that Prince drove to the store, pumped gas, moved in an agile manner, walked across parking lots, talked on the phone while driving, and offered to show a rental property.  Therefore, because the ALJ clearly articulated reasons for its credibility finding, and those reasons were supported by substantial evidence, we will not disturb that finding.  *See Foote*, 67 F.3d at 1562.

The ALJ gave significant weight to the state agency physician's RFC assessment, which noted that Prince could do a wide range of activity, as well as a report that stated that Prince "denies shortness of breath, chest pain or palpitations" and noted that she had "angina pectoris, no diabetic complications" and "benign hypertension."  Contrary to Prince's assertions, the ALJ properly considered the

8

opinions of Prince's treating physicians and gave reasons for according less weight to those opinions.

To the extent Prince argues that the ALJ failed to make detailed findings or explicitly discuss whether her impairments met or equaled Listing 4.04C, this argument is meritless. The ALJ's conclusion that Prince did not meet that specific listing can be implied from the ALJ's discussion of Prince's medical evidence relating to her coronary artery disease and his general conclusion that Prince did not meet any medical listing. *See Hutchison*, 787 F.3d at 1463 (noting that the ALJ does not need to mechanically recite all the evidence in the record that supports a conclusion).

Based on the record as a whole, including the testimony and medical evidence described above, we conclude that substantial evidence supports the ALJ's finding that Prince was able to perform a wide range of daily activities independently, with an ability to perform light exertion at the very minimum and did not have an impairment that met or equaled one contained in the Listings. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.04C2.

### III.

The ALJ has the duty to develop the record fully and fairly. *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). The ALJ must inquire into all relevant

9

facts, even in cases where the claimant is represented by an attorney. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

An ALJ is not required to seek the independent testimony of a medical expert where the record is sufficient to determine whether the claimant is disabled and additional medical expert testimony would be unnecessary. *Wilson*, 179 F.3d at 1278 (noting that the ALJ did not err in failing to obtain medical expert testimony because the record included opinions from several doctors, including the claimant's treating physician). Treating physicians should be re-contacted when the evidence from that physician is insufficient to determine whether the claimant is disabled. *Cf.* 20 C.F.R. § 404.1512(e). To determine whether remand is necessary, this Court must decide "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (internal quotation marks omitted).

The record was sufficiently developed for the ALJ to make a full and fair decision regarding Prince's disability benefits claim. The ALJ considered the 800-page record, which included various opinions and documents from Prince's treating physicians, Prince's testimony, and the medical opinion evidence. Because the record was replete with opinions from several doctors, including Prince's treating physicians, the record was sufficient to determine whether Prince was disabled, and any additional medical expert testimony would have been

unnecessary.  *See Wilson*, 179 F.3d at 1278.  To the extent that Prince argues that the ALJ erred by failing to re-contact her treating physicians regarding their RFC assessments, this argument is unavailing because the record was sufficient to determine whether Prince was disabled.  *See* 20 C.F.R. § 404.1512(e).  Moreover, Prince has not demonstrated any evidentiary gaps that resulted in unfairness or clear prejudice.  *See Brown*, 44 F.3d at 935.  Accordingly, the ALJ did not err by not seeking independent medical evidence or by not re-contacting Prince's treating physicians.  Accordingly, we affirm the district court's order affirming the Commissioner's denial of disability income benefits.

**AFFIRMED.**