[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11984
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-00182-WLS-TQL

WILLIE D. JAMES,

Plaintiff-Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(July 21, 2016)

Before JORDAN, JULIE CARNES and JILL PRYOR, Circuit Judges.

PER CURIAM:

Willie James appeals the district court's judgment affirming the Commissioner of Social Security's (the "Commissioner") final decision denying her applications for social security income and disability insurance benefits, 42 U.S.C. §§ 405(g), 1383(c)(3).  On appeal, James argues that the administrative law judge ("ALJ") erred because (1) the ALJ failed to analyze Listing 12.05(C), and (2) substantial evidence does not support the conclusion that she failed to meet Listing 12.05(C).  After careful consideration, we affirm the district court's judgment in favor of the Commissioner.[1]

I.

James applied for social security and disability benefits.  After a hearing, the ALJ denied her applications, finding that because James could perform light work subject to certain limitations, she was capable of performing her past relevant work.  The Appeals Council denied James's request for review.  James then filed an action in federal district court, asking the district court to reverse the Commissioner's decision.  After briefing, the magistrate judge issued a report and recommendation that the district court affirm the Commissioner's decision.  Although James objected to the magistrate judge's recommendation, the district court adopted it and affirmed the Commissioner's decision.  This is James's appeal.

---

[1] Because we write only for the parties, we set out only those facts necessary to explain our decision.

2

II.

We review the decision of the ALJ as the Commissioner's final decision when, as here, the ALJ denies benefits and the Appeals Council denies review. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "[W]e review *de novo* the legal principles upon which the Commissioner's decision is based." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The Commissioner's factual findings are reviewed with deference, and the "factual findings are conclusive if they are supported by substantial evidence, consisting of such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Doughty*, 245 F.3d at 1278 (internal quotation marks omitted). "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore*, 405 F.3d at 1211.

III.

The social security regulations establish a five-step evaluation process to evaluate disability claims. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step

one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). If not, then the claimant must show at step two that her impairment is "severe," meaning it "significantly limits [her] physical or mental ability to do basic work activities." *Id.* § 404.1520(a)(4)(ii), (c). If the claimant makes that showing, then at step three she must show that she has an impairment that meets or equals the criteria contained in the listings of impairments. *Id.* § 404.1520(a)(4)(iii). If the claimant shows her impairment meets or equals a listing, then she is determined to be disabled. *Id.* If she fails to do so, then at step four, the ALJ considers the claimant's residual functional capacity to determine whether she could still perform her past relevant work activity. *Id.* § 404.1520(a)(4)(iv). If the claimant could not do so, then the ALJ moves to step five and determines whether, in light of the claimant's residual functional capacity, age, education, and work experience, she could perform other work. If so, the claimant is not disabled; if not, the claimant is disabled. *Id.* § 404.1520(a)(4)(v).

James argues that the ALJ erred at step three by failing to conclude that she met Listing 12.05(C), which covers intellectual disability. To qualify under Listing 12.05, James first must meet the diagnostic criteria in 12.05's introductory paragraph: she "must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits

in adaptive behavior before age 22." *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir.1997); *see also* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 ("Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability.").[2]  Although a valid qualifying IQ score creates a rebuttable presumption that a claimant manifested deficits in adaptive functioning prior to age 22, the Commissioner may rebut the presumption with evidence relating to a claimant's daily life.  *See Hodges v. Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001); *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (recognizing a valid I.Q. score was not conclusive evidence of intellectual disability when "the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior.").

In addition to satisfying the diagnostic criteria in Listing 12.05's introductory paragraph, a claimant must meet the specific severity criteria set forth in subparagraphs A, B, C, or D.  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 ("If [a claimant's] impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, [then the claimant] . . . meets the listing.").  A claimant meets subparagraph C when she has "[a] valid verbal,

---

[2] Although the Social Security Administration has not specifically defined deficits in adaptive functioning, the Diagnostic and Statistical Manual of Mental Disorders ("DSM") states that adaptive functioning "refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociological background, and community setting." DSM–IV–TR at 42.

performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05(C).

As an initial matter, James argues that the ALJ erred by failing to explicitly evaluate whether she met Listing 12.05(C).  It is true that the ALJ never explicitly discussed whether James met Listing 12.05(C).  But a finding that a claimant's impairments are not contained in a Listing may be implied from the ALJ's decision.  *See Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986).  A finding that James lacked adaptive deficits as required under the introductory paragraph of Listing 12.05 can be implied from the ALJ's conclusion that James's prior work experience indicated that she did not have an intellectual disability.

We now consider whether there is substantial evidence to support the conclusion that James lacked adaptive deficits.  James presented evidence that in April 2012, she had an IQ score of 65.  Even assuming, as James contends, that this IQ score is valid and thus gives rise to a presumption that James manifested deficits in adaptive functioning prior to age 22,[3] the Commissioner rebutted the presumption by presenting substantial evidence of James's daily activities and behavior showing that she had no adaptive deficit.  James worked for fifteen years,

---

[3] Because we assume for purposes of this appeal that James had a valid IQ score of 65, we need not reach whether substantial evidence would support the ALJ's conclusion that the IQ score was invalid.

much of that time performing semi-skilled jobs. For five years, she worked as a shift leader and cashier at Pizza Hut where she was responsible for running shifts, supervising other employees, preparing bank deposits, cashing out customers, and preparing daily reports. James also independently performs activities of personal care, socializes, and attends church weekly. These facts support a conclusion that, despite her low IQ score, James did not have sufficient adaptive functioning deficits to meet the requirements of the diagnostic description in the introductory paragraph to Listing 12.05. Although there may be other record evidence to support James's arguments, there is substantial evidence to support the conclusion that she failed to meet Listing 12.05(C).

IV.

For the reasons set forth above, we must affirm the district court's order and the Commissioner's decision.

**AFFIRMED.**