[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11682
Non-Argument Calendar
_____

D.C. Docket No. 4:16-cv-00600-AKK


ANNE HUIGENS,

Plaintiff-Appellant,

versus

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(December 11, 2017)

Before HULL, MARTIN and JILL PRYOR, Circuit Judges.

PER CURIAM:

Anne Huigens appeals the district court's order affirming the Commissioner of the Social Security Administration's (the "Commissioner") denial in part of her applications for supplemental security income and disability insurance benefits, filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Huigens argues that: (1) the Administrative Law Judge ("ALJ") erred by failing to afford the proper weight to the opinions of two of her treating physicians; (2) the Appeals Council erred by mechanically applying the age criterion of the Medical-Vocational Guidelines (the "Grids") to find that Huigens was not disabled prior to June 5, 2013; and (3) this Court should remand her case to allow the ALJ to assess her subjective symptom complaints pursuant to the new Social Security Ruling ("SSR") 16-3p, which she contends is retroactive.  After careful review, we affirm.[1]

## I.  FACTUAL BACKGROUND

In 2009, Huigens began experiencing pain in her knees and elbows and was diagnosed with osteoarthritis in her joints.  Over the next five years, various doctors at Quality of Life Health Services ("QLS") treated Huigens's osteoarthritis with prescriptions for anti-inflammatory and pain medications and glucosamine

---

[1]We review the Commissioner's decision to deny benefits to determine whether it is supported by substantial evidence, but we review de novo whether the correct legal standards were applied.  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  Substantial evidence is any relevant evidence, greater than a scintilla, that a reasonable person would accept as adequate to support a conclusion.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  If, in light of the record as a whole, substantial evidence supports the Commissioner's decision, we will not disturb it.  Id. at 1439.  Under this standard, we do not find facts anew, make credibility determinations, or re-weigh the evidence.  Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011).

sulfate, an over-the-counter dietary supplement.  QLS doctors added diagnoses of myalgia and myositis (pain and inflammation of the muscle) in November 2012 and chronic pain syndrome in December 2013, but continued to treat Huigens's pain symptoms with anti-inflammatory and pain medications.  Although Huigens complained of pain, the doctors' clinical findings and the results of diagnostic imaging generally indicated that Huigens's osteoarthritis was "mild," with "mildly reduced" range of motion and some tenderness and swelling.

In July 2010, Huigens applied for benefits, alleging that she became disabled on December 2, 2009, due to arthritis, depression, restless leg syndrome, and memory loss.  In 2012, Huigens and a vocational expert ("VE") testified at a hearing before an ALJ.  After the hearing, the ALJ denied Huigens's applications. The Appeals Council remanded the case, however, and the ALJ held a second hearing in February 2014, at which Huigens and a VE again testified.

After the second hearing, the ALJ denied Huigens's applications for benefits on August 20, 2014.  Following the five-step evaluation process, the ALJ found that: (1) Huigens had not engaged in substantial gainful activity since December 2, 2009; (2) she had the severe impairments of osteoarthritis, chronic pain syndrome, depression, bipolar disorder, and generalized anxiety disorder; (3) her impairments, alone and in combination, did not meet or medically equal the severity of a listed impairment; (4) in light of her residual functional capacity ("RFC") to perform

3

light work with certain restrictions, Huigens was unable to perform her past relevant work of officer manager, cashier-checker, and clerical worker; but (5) considering Huigens's RFC, age, education, and work experience, other work, such as mail sorter, machine tender, and folding machine operator, existed in significant numbers in the national economy that Huigens could perform.  Thus, the ALJ concluded that Huigens was not disabled.

As to Huigens's RFC at steps four and five, the ALJ concluded that Huigens could perform light work with the following restrictions.  Huigens: (1) needed the option to change postures from seated, standing, and walking as frequently as every thirty minutes; (2) could understand, remember, and carry out routine "one to two step" instructions; (3) could sustain attention for simple tasks for extended periods; (4) could maintain a regular work schedule by compliance with appropriate mental health treatment; (5) could handle ordinary, but not excessive, work pressures; (5) could engage only in non-intensive public contact; and (6) could adapt to infrequent change.

In evaluating the medical evidence, the ALJ gave significant weight "to the treatment notes, clinical findings, and diagnostic tests from the treating medical sources of record."  The ALJ noted that Huigens's treating doctors examined her "on a regular and ongoing basis; were familiar with her overall history and complaints; and monitored her condition," and had worked with Huigens by

4

"prescribing medications as needed based on documented laboratory findings." The ALJ found that the treating doctors' "medical records and the notations contained therein are consistent with an assessment that the claimant's impairments do not prevent her from being able to perform a range of light work."

As for the opinions of medical sources, the ALJ gave "little weight" to the opinions of two of Huigens's treating doctors at QLS, Dr. Muhammad Tariq and Dr. Larry Scarborough. Both doctors had completed physical capacities forms in which they opined about Huigens's physical limitations. Specifically, in December 2013, Dr. Tariq indicated that due to her medical conditions, Huigens: (1) could sit for up to one hour, stand for up to thirty minutes, and walk for up to fifteen minutes at a time; and (2) would need to lie down, sleep, or sit with her legs raised for two hours in an eight-hour period. In May 2014, Dr. Scarborough indicated that, inter alia, Huigens: (1) could sit for up to eight hours, stand for up to 15 minutes, and walk for up to 15 minutes at one time; and (2) would need to lie down, sleep or sit with legs raised for one hour in an eight-hour period. The ALJ explained that he assigned less weight to these two doctors' opinions because they were inconsistent with the doctors' own treatment notes—which did not report severe symptoms or medical restrictions and showed conservative treatment with medication—and with the other medical evidence in the record.

Huigens requested Appeals Council review.  As to the denial of disability benefits, the Appeals Council denied review.  As to the denial of supplemental security income, however, the Appeals Council issued a partially favorable decision.

More particularly, as to supplemental security income, the Appeals Council agreed with the ALJ's findings at steps one through four and with the ALJ's finding, at step five, that Huigens had an RFC to perform a reduced range of light work with a sit or stand option up through June 4, 2013, the day before she turned 55 years old.  The Appeals Council adopted the ALJ's conclusion that Huigens was not disabled before that date.

The Appeals Council concluded that Huigens became disabled on June 5, 2013, her 55th birthday.  In reaching its decision, the Appeals Council determined that prior to June 5, 2013, Huigens was "closely approaching advanced age" because she was under the age of 55.  The Appeals Council noted that Huigens had a high school education and skilled or semi-skilled past relevant work; however, the issue of transferability of work skills was not material in view of Huigens's age and RFC.  Recognizing that Huigens was not able to perform the full range of "light work," the Appeals Council used the Grids as a "framework for decision making" and found that there were a significant number of jobs in the national economy that Huigens could perform before turning 55.  The Appeals Council

6

found, however, that as of June 5, 2013, based on her change in age category, Rule 202.06 of the Vocational Grids directed a finding that she was disabled.

## II.  DISCUSSION

### A.    Treating Doctors' Opinions

In considering at the fourth and fifth steps whether a claimant can perform either her past relevant work or other work in the economy, the ALJ must determine the claimant's RFC by considering all relevant medical and other evidence.  See Phillips v. Barnhart, 357 F.3d 1232, 1238-39 (11th Cir. 2004); see also 20 C.F.R. §§ 404.1520(e), 416.920(e).  This includes the different medical opinions found in the record.

In assessing RFC, the ALJ must state with particularity the weight given to different medical opinions and the reasons for doing so.  Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).  The ALJ must give a treating physician's medical opinion substantial or considerable weight, unless the ALJ clearly articulates good cause for discrediting that opinion.  Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011); see also 20 C.F.R. § 416.927(c)(2).  "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  Winschel, F.3d at 1179 (quotation marks omitted).

7

However, an ALJ may reject any medical opinion if the evidence supports a contrary finding. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). When the ALJ's articulated reasons for assigning limited weight to a treating physician's opinion are supported by substantial evidence, there is no reversible error. See Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).

Here, the ALJ followed the correct legal standards in refusing to give Dr. Tariq's and Dr. Scarborough's opinions great weight, because the ALJ articulated good cause for doing so. See Winschel, 631 F.3d at 1179. The ALJ clearly stated in his written opinion that Dr. Tariq's and Dr. Scarborough's medical opinions regarding Huigens's limitations were: (1) not supported by their own treatment notes, and (2) contradicted by other evidence in Huigens's medical record, including other physicians' opinions and Huigens's history of conservative treatment.

Further, substantial evidence supports the ALJ's conclusions. See Winschel, 631 F.3d at 1178. Dr. Tariq's treatment notes reveal that Dr. Tariq did not order any diagnostic tests or intensive treatment like surgery, but determined that Huigens's conditions could be managed through medications. Similarly, Dr. Scarborough's treatment notes reveal that: (1) Dr. Scarborough did not indicate that Huigens had a reduced range of motion, despite observing joint pain; (2) Huigens was able to maintain a "moderate activity level"; (3) Huigens's blood

test showing a 2 mm/h ESR placed her well within the normal range of 0 mm/h to 30 mm/h ESR; and (4) Dr. Scarborough believed Huigens's condition could be conservatively managed through medication and did not require more intensive treatment or referral to a specialist.

Moreover, Huigens's other medical records reveal that: (1) she had only a mildly-reduced range of motion and mobility; (2) she frequently described her own pain level as zero out of ten; (3) her x-rays showed only slight degenerative joint disease in her elbows; (4) she was independent in daily living and ambulation; and (5) she was able to stand, sit, walk, reach, push, pull, and operate foot controls. Thus, considering Huigens's medical record as a whole, substantial evidence supported the ALJ's determination that good cause existed to discredit Dr. Tariq's and Dr. Scarborough's opinions that Huigens was unable to perform work-related tasks, and that her limitations dated back to December 2009.

## B.    Application of the Vocational Grids

At the fifth step of the ALJ's sequential analysis, the burden shifts to the Commissioner to show that significant numbers of jobs exist in the national economy that the claimant could perform. Winschel, 631 F.3d at 1178, 1180; see also 20 C.F.R. §§ 404.1520(a)(4)(v) & (g), 404.1560(c)(2), 416.920(a)(4)(v) & (g), 416.960(c)(2).  An ALJ may determine whether the claimant has the ability to adjust to other work in the national economy by applying the Grids or by obtaining

9

the testimony of a vocational expert. <u>Winschel</u>, 631 F.3d at 1180. "The grids are a series of matrices which correlate a set of variables—the claimant's [RFC] (*i.e.*, the ability, despite impairments, to do sedentary, light, etc. work), age, educational background, and previous work experience. Upon the entry of a set of these variables into the appropriate matrix[,] a finding of disabled or not disabled is rendered." <u>Gibson v. Heckler</u>, 762 F.2d 1516, 1520 (11th Cir. 1985).

Exclusive reliance on the Grids is inappropriate when, as here, the claimant is unable to perform a full range of work at a given residual level. <u>Phillips</u>, 357 at 1242; <u>see also</u> 20 C.F.R. pt. 404, subpt. P, app. 2 § 200.00(a). In such circumstances, the Grids may still be used "as a framework to evaluate vocational factors," in addition to other evidence, such as VE testimony about jobs in the economy the claimant can perform. <u>See</u> <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1227 (11th Cir. 2002); 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(d) (recognizing that the Grids can "still provide guidance for decisionmaking").

Under the regulations, "age" as a vocational characteristic means a claimant's "chronological age." 20 C.F.R. §§ 404.1563(a), 416.963(a). A person under age 50 is classified as "younger," a person aged 50 to 54 is classified as "closely approaching advanced age," and a person aged 55 or older is classified as "advanced age." 20 C.F.R. §§ 404.1563(c)-(e); 416.963(c)-(e). At step five of the sequential evaluation process, age is considered a factor that affects a person's

ability to adjust to other work, and an individual who has the ability to adjust to other work is not disabled.  20 C.F.R. §§ 404.1563(a), 416.963(a).

This Court has proscribed the mechanical application of the Grids "on the basis of a claimant's age, in order to establish conclusively a claimant's adaptability to a new work environment."  Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987).  Instead, the Commissioner may rely upon the claimant's age as evidence of adaptability to a new work environment, but only if the claimant fails to proffer "substantial credible evidence that his ability to adapt is less than the level established under the grids for persons his age."  Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984).

Similarly, in discussing the Commissioner's use of the age categories, the regulations provide that,

> [the Commissioner] will not apply the age categories mechanically in a borderline situation.  If [the claimant is] within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant is] disabled, [the Commissioner] will consider whether to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case.

20 C.F.R. §§ 404.1563(b), 416.963(b) (emphasis added).

At the time of the Appeals Council's decision, the Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX") stated that the claimant seeking borderline age treatment must show additional

adversities—such as an additional impairment that infringes upon, but does not substantially narrow, the claimant's remaining occupational base, illiteracy in English, limited education, or a history of unskilled work in an isolated industry—justifying the use of a higher age category. See HALLEX, II-5-3-2 (1993) (providing that, "[a]bsent a showing of additional adversity(ies) justifying use of the higher age category, the adjudicator will use the claimant's chronological age-even when the time period is only a few days"), available at http://www.ssa.gov/OP_Home/hallex/II-05/II-5-3-2.html;[2] see also Reeves, 734 F.2d at 526 (11th Cir. 1984) (explaining that, if the claimant fails to meet his burden to present substantial credible evidence that his ability to adapt to a new work environment is less than the level established under the grids for persons of his age, "the ALJ's mechanistic use of the age grids would be harmless error and there would be no need" to remand to the Commissioner). This Court has stated that the factors already relied upon to determine the claimant's RFC are

---

[2]Since the Appeals Council's February 18, 2016 decision in Huigens's case, the Appeals Council has "removed HALLEX II-5-3-2 in its entirety [and] incorporated instructions for handling borderline age issues in new HALLEX I-2-2-42 and I-3-3-25." Trans. No. II-5-11, available at http://www.sssa.gov/OP_Home/hallex/TS/tsii-5-11.html. The new HALLEX instructions do not require the claimant to show additional vocational adversities. HALLEX I-2-2-42 (2016), available at http://www.sssa.gov/OP_Home/hallex/I-02/I-2-2-42.html; HALLEX I-3-3-25 (2016), available at http://www.sssa.gov/OP_Home/hallex/I-03/I-3-3-25.html. Rather, the ALJ considers the overall impact of all the factors—RFC, age, education and work experience—and any "additional element(s) present that seriously affects a claimant's ability to adjust to other work" using a "sliding scale" approach, and "the claimant must show that the factor(s) have a progressively more adverse impact on his or her ability to adjust to other work[.]" HALLEX I-2-2-42 C.2 & C.3. Huigens does not argue that these new instructions should apply to, or change to outcome of, her case.

insufficient to show additional adversities creating a lesser ability to adapt. See

Hutchison v. Bowen, 787 F.2d 1461, 1465 (11th Cir. 1986) (holding that a

claimant's "attempts to rely upon the impairment which created the disability in

the first instance in establishing his lesser ability to adapt . . . failed to meet this

burden").

Huigens argues that the Appeals Council erred by mechanically applying the

age criterion of the Grids to deprive her of social security income benefits at age 54

and a half.  Huigens points out that the Appeals Council may treat a claimant in a

borderline age situation as in the higher age category to avoid mechanically

applying the Grids and asserts that her medical records reveal that she had

"significant limitations" by December 31, 2012, her last insured date, including

depression, anxiety, and fibromyalgia.

The Appeals Council applied the correct legal standard when it classified

Huigens as "closely approaching advanced age" and determined that she was not

disabled before June 5, 2013.  First, the record illustrates that the Appeals Council

did not mechanically apply the Grids to determine that Huigens was able to adapt

to new work during the relevant period based solely on her age.  The Appeals

Council explicitly stated in its decision that it considered Huigens's high school

education level and her skilled and semiskilled past relevant work in addition to

her age and also that it used Rule 202.14 of the Grids merely "as a framework for decisionmaking."

Second, substantial evidence supports the Appeals Council's decision to classify Huigens as "closely approaching advanced age" from December 31, 2012 until June 5, 2013. The record establishes that Huigens was born on June 6, 1958, and thus that she was 54 years, 6 months, and 25 days old on December 31, 2012, the last date she met insured status.

Because Huigens was 54 years old during the relevant period, in order to avail herself of borderline age treatment, Huigens had to show that: (1) she was within "a few days to a few months" of turning 55 years old; and (2) additional adversities justified the use of a higher age category. See 20 C.F.R. §§ 404.1563, 416.963; HALLEX, II-5-3-2. Even assuming arguendo that the 5-month period before Huigens turned 55 satisfies the within "a few days to a few months requirement," Huigens did not show additional adversities. For example, the record reveals that Huigens (1) had transferrable skills from her past relevant work as an office manager, cashier-checker, and clerical worker; (2) could communicate in English; and (3) attained at least a high school education. See HALLEX, II-5-3-2. Further, to the extent Huigens argues that some of her impairments—depression, anxiety, and chronic pain—justified the use of a higher age category, Huigens's argument fails because those impairments were considered by the ALJ

14

in formulating her RFC, and, thus, are insufficient to show additional adversities warranting the use of a higher age category.  See Hutchison, 787 F.2d at 1465. Accordingly, the Appeals Council did not err in using Huigens's chronological age to determine at step five that Huigens was not disabled from December 31, 2012, until June 5, 2013.

## C.    Social Security Ruling 16-3p

Huigens argues that this Court should remand her case to the Appeals Council for further consideration in light of SSR 16-3p, which was issued one month after the Appeals Council's February 18, 2016 decision in Huigens's case and became effective on March 28, 2016.  See SSR 16-3p, 81 Fed. Reg. 14166 (March 16, 2016); 81 Fed. Reg. 15776 (March 24, 2016).  SSR 16-3p rescinded the Social Security Administrations prior rule for subjective symptom evaluation, SSR 96-7p, to the extent that it "eliminated the use of the term 'credibility' in the sub-regulatory policy and stressed that when evaluating a claimant's symptoms the adjudicator will 'not assess an individual's overall character or truthfulness' but instead 'focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability

to perform work-related activities . . . .'"  Hargress v. Soc. Sec. Admin., 874 F.3d 1284, 1289-90 (11th Cir. 2017) (quoting in part SSR 16-3p).

Huigens's argument that SSR 16-3p applies retroactively is foreclosed by our precedent.  In Hargress, this Court concluded that SSR 16-3p "applies only prospectively and does not provide a basis for remand."  Id. at 1290.[3]

In any event, to the extent the ALJ stated in his decision that Huigens's "credibility is questionable," the ALJ's statement, viewed in context, was not an assessment of Huigens's overall character for truthfulness and thus was consistent with both SSR 96-7p and SSR 16-3p.  See SSR 16-3p, 81 Fed. Reg. at 14167.  The context shows that the ALJ's statement was merely an assessment of the reliability of Huigens's subjective report of the nature and extent of her symptoms after weighing it in light of the "treatment records, diagnostic findings, opinions of . . . examining and non-examining physicians, and [Huigens's] level of daily activities."  Thus, even if SSR 16-3p applied retroactively to Huigens's case, the ALJ did not commit reversible error in conducting the subjective symptom evaluation.  See Hargress, 874 F.3d at 1290 n.3; SSR 16-3p, 81 Fed. Reg. at 14169–70; SSR 96-7p, 61 Fed. Reg. 34483, 34485 (July 2, 1996).

_____

[3]Additionally, we note that on October 25, 2017, the Social Security Administration republished SSR 16-3p with the revision that it was "applicable on MARCH 28, 2016," and explained that its "adjudicators will apply this ruling when we make determinations and decisions on or after March 28, 2016," and that it expected that federal courts reviewing those determinations and decisions would do so "using the rules that were in effect at the time we issued the decision under review."  82 Fed. Reg. 49462, 49468 & n.27 (Oct. 25, 2017)

## III.  CONCLUSION

For all these reasons, we affirm the district court's order affirming the Commissioner's decision to deny Huigens's application for disability insurance benefits and to deny her application for supplement social security income before June 5, 2013.

**AFFIRMED.**